Emilie Wilhelmine Peacock et al. v. Lillie M. Phillips, et al., Edwin F. Masterson, Appellant, v. J. Arnold Scudder, Appellee.

## Gen. No. 14,994.

PLEDGES—*rights of purchaser.* Where a borrower to secure the redemption of his debt pledges his own note and mortgage of a greater face value than the amount of the particular obligation and by the pledge agreement authorizes the pledgee to sell the note and mortgage upon default in payment of the principal note and the pledgee does so sell in good faith to a purchaser having full knowledge of all the facts, such purchaser takes the note and mortgage with the right to enforce the mortgage either at law or in equity only for the amount for which such note and mortgage were originally pledged with interest, costs and attorney's fees.

Foreclosure. Appeal from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed and remanded with directions. Opinion filed May 3, 1910.

EDWARD F. DUNNE and EDWIN F. MASTERSON, for appellant.

MATZ, FISHER & BOYDEN, for appellee; W. H. L. BELL, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

The following material facts shown by the record are uncontroverted:

Lillie M. Phillips was on November 27, 1906, the owner of certain residential property, known as No. 151 Astor street, Chicago. On that date she borrowed $2,500 from the Chicago Savings Bank and Trust Company and executed and delivered to the bank her promissory note for that sum. At the same time she and her husband executed their note for $4,000, payable to their own order and by them endorsed in blank, and also a trust deed of the premises in question to secure the payment of the $4,000 note. This trust deed was a second mortgage upon the premises in question, subject to a first mortgage for $15,000. This $4,000 note and trust deed were delivered to the bank as collateral security for the payment of the $2,500 note. The $2,500 note was in the usual form of collateral notes taken by banks, and provided that upon default in the payment of the said note the bank might sell the $4,000 note and trust deed. This $4,000 note and trust deed were, according to the Stipulation of Facts, pledged as security for the $2,500 note, and for no other purpose, and appellant in stating that it was pledged for the $2,500 note "and any other liabilities, either direct or contingent, of the undersigned to said bank," etc., must have overlooked this part of the stipulated facts.

Upon the maturity of the $2,500 note, on January 26, 1907, a new note for a like sum, payable thirty days after date, with the same collateral provisions, was given in place of the original note, and the same $4,000 note and trust deed were continued as collateral security therefor. This second $2,500 note was not paid at maturity. Two months later, on April 29, 1907, the bank sold the $4,000 note and trust deed to appellee, J. Arnold Scudder, for an amount equal to the principal

and interest of the $2,500 note. Appellee knew the circumstances of the pledge, but the sale was *bona fide*, and thereafter the bank cancelled the $2,500 note, returned it to Mrs. Phillips, and retained no further interest in the transaction.

Six weeks after the sale of the $2,500 note to appellee, the appellant, Edwin F. Masterson, took a quit-claim deed of the mortgaged premises from Mrs. Phillips and her husband. At that time he was informed that the $4,000 note and trust deed were pledged as collateral security for the $2,500 note, and that the bank had authority to sell said $4,000 note and trust deed upon default in the payment of the $2,500 note, but he did not know that such a sale had already been made.

Foreclosure proceedings were begun in this case July 3, 1907, by the holder of the first mortgage for $15,000. Appellee filed his cross-bill in those proceedings to foreclose his mortgage. While the proceedings were pending, appellant paid off the first mortgage and paid to appellee the amount for which appellee had purchased the $4,000 note, together with interest and solicitor's fees; and at the same time deposited with the Clerk of the Circuit Court the sum of $1,800 to be held by the Clerk pending the result of this suit; and the lien of the trust deed was transferred from the real estate to the fund of $1,800.

The Circuit Court entered a decree in accordance with the prayer of the cross-bill for $1,618 and interest thereon from March 3, 1908, the date of the master's report, and ordered the clerk of the court to pay out of the moneys deposited with him in the cause to the cross-complainant, J. Arnold Scudder, that sum with interest to the date of payment; and to pay to the cross-defendant Edwin F. Masterson, appellant, such sum as shall remain in his hands after such payment to Scudder. Mr. Masterson prosecutes this appeal to reverse the decree.

The record presents but one question which may be

stated concretely as follows: Is cross-complainant Scudder, as the purchaser of the $4,000 note and mortgage deposited with the bank as collateral security for payment of the $2,500 note with full notice of all the facts, entitled to a decree in this foreclosure proceeding for the full $4,000 and interest, less the payment made thereon; or was Scudder's equitable lien under the trust deed satisfied by the payment of $2,871.48, being $2,500, and interest and solicitor's fees?

The question may be stated abstractly substantially as put by counsel for appellee, as follows: Where a borrower, to secure the repayment of his debt, pledges his own note and mortgage of a greater face value than the amount of the principal obligation, and by the pledge agreement authorizes the pledgee to sell the note and mortgage upon default in payment of the principal note, and the pledgee does so sell in good faith to a purchaser having full knowledge of all the facts, does the purchaser take the note and mortgage with the right to enforce the mortgage in equity for the face value of the note?

The theory and contention of appellee, Scudder, is that the bank agreed to loan to Mrs. Phillips $2,500 and in consideration for that loan she agreed to give to the bank the principal note for $2,500 and she also agreed that she would deposit the $4,000 note and trust deed and sign the collateral agreement giving the bank authority to sell the same on default in the payment of the principal note; that the bank did everything which it was required to do and defaulted in nothing, and that it did only what it was expressly authorized to do, when it sold the note and trust deed. Its right to sell the collateral was a part of the consideration for making the loan. The bank, as the holder of this pledge, held it just as it would hold any pledge of personal property (goods or horses, for example) for what it was worth, as a trustee for the pledgor, and when a sale was made, it was its duty to sell it for the best price it would bring; that it was Mrs. Phillips,

herself, selling the note and trust deed by her agent or trustee, and if the sale was a *bona fide* sale to a third party (and such was the fact here), the purchaser took good title to the note and trust deed for its full value, with the right to a decree of foreclosure and sale of the property for the amount of the note and interest.

In support of this theory reliance is placed on Trust Estate of Woods, Weeks & Co., 52 Md. 520; Morris Canal & B. Co. v. Fisher, 9 N. J. Eq. 667; Potter v. Thompson, 10 R. I. 1; and Atlantic Trust Co. v. Woodbridge Canal & I. Co., 86 Fed. Rep. 975; and it is contended that the doctrine of Olds v. Cummings, 31 Ill. 188, has no application to any case where the mortgagor expressly authorizes the sale and assignment of the mortgage.

In Trust Estate of Woods, Weeks & Co., *supra,* no mortgage or trust deed was given to secure the notes in controversy. The notes had been deposited as collateral security for indebtedness due Garrett & Sons with an agreement that if certain drafts accepted by Garrett & Sons were not met that the collaterals might be sold. The drafts were not met and the Garretts sold the collaterals to Harvey and to Drexel, Morgan & Co. for less than their face value. Woods, Weeks & Co. subsequently executed a deed of trust for their creditors, and a court of equity took charge of the administration of the trust created by the deed. Drexel, Morgan & Co. and Harvey proved up their claims for the full face value against the insolvent estate, and the court allowed the claims so proved. The Garretts also filed a claim for the balance due them; and the main question was, did the purchasers of the notes have a right to a dividend for the full amount of the notes? The court held they were entitled to such a dividend, although the real balance due the Garretts was only $50,537.77, while the exhibited claims of Drexel, Morgan & Co., Harvey and the Garretts against the estate, all growing out of the transactions between the Garretts and the insolvents, amounted to $126,250.40.

A very able dissenting opinion was filed in that case by Chief Justice Bartol, in which, it seems to us, the more reasonable and just conclusion is reached, that the execution of the power of sale conferred on the Garretts did not clothe the purchasers, who took the notes after maturity and with full knowledge of the facts, with different or better rights than the Garretts had. Moreover, the basic principle of that case is contrary to the law of this State. Hynes v. Illinois Trust & Sav. Bank, 226 Ill. 95.

The case of Morris Canal & Bank Co. v. Fisher, *supra,* involved a public sale of bonds of the Company, payable to bearer, pledged to secure a loan by Lewis to the company. The bonds had not matured and were secured by a mortgage on the property of the company. The note to Lewis was not paid at maturity and the complainant Fisher purchased the bonds at public auction. The company having refused to pay the interest on the bonds, Fisher filed a bill for foreclosure and sale of the canal property. It does not appear in the case that Fisher had any notice or knowledge of any defenses to the bonds. After passing upon several questions raised, it was held that Lewis had a right to sell the bonds, and that complainant Fisher was a *bona fide* purchaser of the bonds and took the legal title thereby; that the bonds were instruments of a peculiar character, expressly designed to pass from hand to hand by delivery so as to confer a complete legal title, and that they were such negotiable securities as were usually sold in the market, and that the company when it issued the bonds must have understood the settled usage in regard to such securities to transfer and circulate them without inquiry as to the title of the transferrer, and, therefore, they differed from common obligations. After declaring that such bonds were generally issued for the express purpose of raising money by their sale, the court holds that to permit parties to dispute the result of such usage would be to permit parties to take advantage of their own wrong; and to declare them

subject to existing equities, as in the case of ordinary bonds, upon every transfer of them would strike a blow at the great mass of securities in the market.

It clearly appears, we think, that the securities in question in that case were of a very different character from those here involved, and that the case called for the application of different principles in its decision. See P. S. R. R. Co. v. Thompson, 103 Ill. 187. It is not applicable to the facts of this case.

Potter v. Thompson, *supra,* was an action at law, and the question here presented was not involved.

In Atlantic Trust Co. v. Woodbridge Canal & I. Co., *supra,* the decision is very brief, and without discussing the question involved, Wade v. Railroad Co., 149 U. S. 327, is cited as the basis of the court's conclusion. That case, however, is not authority for the conclusion reached in the Atlantic Trust Co. case.

Upon a careful consideration of the facts, and the reasoning of the master as expressed in his report, and the argument of counsel for appellee, we are unable to reach the conclusion that the rule of Olds v. Cummings does not apply. In our opinion it works out the equities of the case surely and safely and must control in the solution of the question here involved. We think that if there had been a public sale of the collateral here involved by the bank and the bank had bid it in, and filed a bill to foreclose the mortgage, it would have been entitled to a decree for the amount loaned by it to Mrs. Phillips with interest, costs and attorneys' fees, and no more.

"Courts of equity will not be confined to legal forms and legal titles, but look beyond these, to the substantial, equitable rights of parties." The equitable rights of the parties as between the bank and Mrs. Phillips, the mortgagor, would have justified a decree for the amount above indicated, and no more.

By transferring the $4,000 note to appellee, Scudder, an equitable assignment of the trust deed, which was not assignable by common law or by statute, was car-

ried with the note.   Here the remedy is sought through the medium of the trust deed, or mortgage in equity, and the note is used merely as an incident to the mortgage.   "He who buys that which is not assignable at law, relying upon a court of chancery to protect and enforce his rights, takes it subject to all infirmities to which it is liable in the hands of the assignor; and the reason is that equity will not lend itself to deprive a party of a right which the law has secured him, if such right is intrinsically just of itself."   Olds v. Cummings, *supra.*   See also Walker v. Dement, 42 Ill. 272; Haskell v. Brown, 65 *id.* 29; McAuliffe v. Reuter, 166 *id.* 491; Buehler v. McCormick, 169 *id.* 269.

In McAuliffe v. Reuter, *supra,* it is said at page 496 of the opinion: "But this is a suit to foreclose the deed of trust as a mortgage, and the law is well settled in this State that in such a suit, as a mortgage is a mere chose in action not negotiable, the mortgagor without notice of its assigment may interpose any defense arising out of the transaction with the mortgagee which he could set up against the mortgagee in case the bill was filed by him.   This rule was announced in this State by this court in Olds v. Cummings, 31 Ill. 188, and has been re-stated and applied in a score or more cases since then, down to Humble v. Curtis, 160 Ill. 193, where it was said (p. 202): "That he (the assignee) would take the mortgage subject to the equitable defenses existing in favor of the mortgagor is settled in Olds v. Cummings, 31 Ill. 188, and numerous other cases.   The reason there given is, that it is the duty of the purchaser of a mortgage, it not being assignable so as to vest the legal interest, to inquire of the mortgagor if there be any reason why it should not be paid."

Appellee, Scudder, had full knowledge of the facts stipulated by him to be true, namely, "that said principal note for four thousand dollars ($4,000) and coupon notes evidencing the interest upon said principal note, and said trust deed, were delivered to said Chi-

cago Savings Bank & Trust Company as said collateral security for the payment of said note of twenty-five hundred dollars ($2,500), and for no other purpose, and it was accepted by said bank for that reason only;" and that beyond that there was no other consideration whatever given or received for the trust deed. It is, therefore, too clear for argument or the citation of authority, that the bank could not recover in an equitable action on the mortgage anything more than its debt with interest, costs and attorneys' fees stipulated for in the deed. As held in Third Nat. Bank v. Eastern R. R. Co., 122 Mass. 240, a debtor's liability to his creditor is not increased by increasing the number of promises to pay the same debt, in whatever form he may make them. People v. Remington, 121 N. Y. 675; International T. Co. v. Union Cattle Co., 3 Wyoming, 803.

Appellant, Masterson, as the grantee of Mrs. Phillips of the premises described in the cross-bill, stands in the shoes of Mrs. Phillips and may assert her defenses in this suit.

These considerations dispose of the case on the grounds stated. There is carried, however, in what we have said, the implication that appellee, Scudder, in an action at law on the note, might recover the full face value of the note upon the facts presented in the record. Indeed, this is broadly asserted by counsel for appellee and is conceded in appellant's briefs and argument. We do not so hold. On the contrary, we are of the opinion that Scudder could recover at law on the note the amount which he paid for it and no more. "Whenever the defendant is entitled to go into the question of consideration, he may set up the partial as well as the total want of consideration." David on Negotiable Instruments, Vol. 1, pr. 201, and authorities there cited. Walker v. Carleton, 97 Ill. 582.

The basis of the argument for appellee is, that the bank had no relation whatever to the $4,000 note and trust deed except as pledgee. There was nothing in

the collateral agreement giving the bank the right to enforce the payment of the note either in law or equity. And the bank in selling the note acted purely as pledgee, and was nothing more than the agent and trustee of Mrs. Phillips under the authority given it in the collateral agreement to sell upon default. Assuming this proposition, it follows, we think, as a legal result that the note first went into circulation, as a note, by its sale and delivery to Scudder, who thereby became the payee. In other words Mrs. Phillips executed the note and through her agent, the bank, delivered it to Scudder, who paid Mrs. Phillips through the bank $2,530.62 for the note. What Mrs. Phillips did through the bank as her agent was her act in legal effect. We may then for the purpose of simplifying the question eliminate the bank and consider the question as if Mrs. Phillips herself had received the $2,530.62 from appellee Scudder and delivered to him the note in question. In our opinion Scudder could recover, in an action at law, only the amount paid for the note with interest.

The decree is therefore reversed and the cause is remanded to the Circuit Court with directions to order the payment of the amount deposited to appellant, Edwin F. Masterson, and to dismiss the cross-bill of appellee Scudder.

*Reversed and remanded with directions.*