RICHARD W. BURNES *vs.* NEW MINERAL FERTILIZER COMPANY
& others.

Suffolk.    March 4, 1914. — June 17, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & CROSBY, JJ.

*Small Loans.    Pledge.    Bills and Notes.*

The provision of St. 1912, c. 675, § 5, amending the small loans act, St. 1911, c. 727, § 17, that "any loan made or note purchased, or endorsement or guarantee furnished by an unlicensed person . . . in violation of this act shall be void," does not make void in the hands of a *bona fide* purchaser a note given as collateral security for a note given in violation of the act.

If a money lender, who, in a transaction within the provisions of the small loans act, St. 1911, c. 727, as amended by St. 1912, c. 675, and without being licensed as therein required, procured from a corporation as security for a loan to it of $200 its note for $500 indorsed for accommodation by several individuals and delivered the note to an associate who pledged it as collateral security for the associate's personal note given to one, who, in good faith and with no notice or knowledge of the infirmity of the security, lent such associate money therefor, the note giving the pledgee power to sell the security at public or private sale upon non-payment of the note; and if, upon default in the payment of such note, the pledgee sold the corporation's note for less than its face value at a public auction of which all parties to it had notice, both the pledgee and the purchaser having notice at the sale of all the foregoing facts, the purchaser at the sale, in an action on the note against the corporation and the indorsers, is entitled to recover the full amount of the note.

CONTRACT, against the New Mineral Fertilizer Company as maker of a negotiable promissory note for $750, payable to its own order, and against it and William N. McCrillis and William B. Arnold as indorsers, all indorsements being in blank.    Writ in the Municipal Court of the City of Boston dated April 15, 1913.

On removal to the Superior Court, the case was tried before *Lawton,* J.    At the close of the evidence, all parties waived trial by jury and, upon facts agreed upon and in evidence, the judge found as follows:

The note was indorsed by the individual defendants before delivery without consideration and for the accommodation of the defendant corporation, which was maker and payee and indorser, and was then delivered to one George I. Robinson, Jr., under the following circumstances.    The president of the defendant corpora-

tion, McCrillis, called on Robinson to arrange to take care of a note of the defendant corporation for $700 which was about to mature, and took with him the note in suit, believing that it could be exchanged for the note of that amount about to mature. Robinson stated that such an arrangement was impossible, but that if the maturing obligation could be reduced to $500, the person who held it (not Robinson) would renew the loan for that amount. McCrillis thereupon delivered to Robinson a new note of the defendant corporation for $500, indorsed as is the note in suit, and also delivered to him the note in suit as security for a loan of $200 at five per cent a month, to cover the balance of the $700 note about to mature.

At the time of these transactions Robinson was engaged in Boston in the business of making loans of $300 or less on which was to be paid for interest and expenses an amount exceeding an amount equivalent to twelve per cent per annum upon the sum loaned, and, in violation of the provisions of St. 1911, c. 727, as amended by St. 1912, c. 675, had not obtained from the supervisor of loan agencies a license to carry on that business in Boston.

Robinson obtained the $200 by borrowing it from a third person for a short time, delivering to him the note in suit as security. When the loan by the third person was about to mature, the note in suit was taken by one McQuaid, an associate of Robinson, and McQuaid delivered it to the Winnisimmet Trust, Inc., as security for the repayment of a loan of $390 then made to him, for which he gave his note in collateral form. One of the provisions of McQuaid's collateral note gave to the holder "full power and authority to sell, transfer, assign and deliver the whole of said property or any part thereof or any substitutes thereof or any additions thereto, without notice or demand, either at public or private sale, or otherwise, at the option of the holder, upon the non-payment or non-performance of this promise, or the non-payment of any or either of the liabilities above mentioned, at any time, and after deducting the legal or any other costs or expenses, whether for collection, sale, delivery, or otherwise, to apply the residue of the proceeds of such sale or sales so to be made to pay any, either or all of said liabilities as said holder shall deem proper, returning the surplus, if any, to the undersigned."

McQuaid's note was not paid at maturity and, pursuant to the power of sale therein contained, the note in suit was sold at an auction sale of which all parties, including the defendants, had due notice, and was purchased by the plaintiff for $400.

At the time of the loan of Winnisimmet Trust, Inc., to McQuaid, when the note in suit was delivered to Winnisimmet Trust, Inc., Winnisimmet Trust, Inc., had no notice of any infirmity in the note, defect of title of McQuaid, or any irregularity in connection therewith, but, at the time of the auction sale of the note, Winnisimmet Trust, Inc., and the plaintiff were fully informed of all the facts connected with the note.

The judge ordered judgment for the defendants, and by agreement of the parties reported the case to this court for determination, with the stipulation that, if the finding and order were correct, judgment for the defendants was to be entered; otherwise, such judgment was to be entered as the facts and the law require or warrant.

*C. A. Warren,* for the plaintiff.

*L. Bryant,* for the defendants.

LORING, J. The defendants' first contention in this case is that where a negotiable security is deposited as collateral for a loan made in violation of the small loans act (St. 1911, c. 727, amended by St. 1912, c. 675), not only is the deposit of the security void, but the security itself, by force of that act, becomes a nullity, so that in case it is afterwards separated from the void loan and bought in good faith by an innocent purchaser for value, no recovery can be had upon it. They rely in this connection upon the cases in which it was held under the usury acts that no recovery could be had on notes made void by these acts; even when they are in the hands of *bona fide* purchasers for value; as to which see *Whitten* v. *Hayden,* 7 Allen, 407, and cases there cited. The history of these statutes is given in *Kendall* v. *Robertson,* 12 Cush. 156.

But four years before the usury laws were repealed, this policy of the Commonwealth was changed, and it was enacted by St. 1863, c. 242, that notes given for a loan on which usurious interest had been charged should be valid in the hands of a *bona fide* purchaser for value.

In the light of the policy finally adopted with respect to notes

founded upon usurious interest, we come to the true interpretation of the small loans act.  It is apparent that there is nothing in that act which makes void not only notes given in violation of the act, but securities deposited as collateral for such notes.  The language of the act (St. 1911, c. 727, § 17, as amended by St. 1912, c. 675, § 5) is: "Any loan made or note purchased, or endorsement or guarantee furnished by an unlicensed person, partnership, corporation or association in violation of this act shall be void." In *Van Schaack* v. *Stafford,* 12 Pick. 565, *Dunscomb* v. *Bunker,* 2 Met. 8, and in *Harrison* v. *Hannel,* 5 Taunt. 780, the action was brought by the person to whom the usurious loan had been made. In such a case the loan itself is void, and nothing being due on the debt for which the collateral was deposited as security, no recovery can be had on the collateral.

The more difficult question in the case is whether the plaintiff can recover the full amount of the note or is restricted in his recovery on it to the amount which could have been collected by the Winnisimmet Trust, Inc.

It appears that the Winnisimmet Trust, Inc., was a *bona fide* purchaser for value.  But it also appears that full information of all the facts was given to the plaintiff at the sale when he bought the note.

Under these circumstances the plaintiff must claim under the title of the Winnisimmet Trust (R. L. c. 73, § 75).  By R. L. c. 73, § 44, the Winnisimmet Trust was "a holder for value to the extent of . . . [its] lien."  This provision of R. L. c. 73, § 44, is a codification of the rule which had been adopted in Massachusetts before the negotiable instruments act was passed.  The principle on which that rule was founded is that in such a case the *bona fide* pledgee should recover nothing more than the amount due to it (the pledgee), because, if it recovers more, it would hold the surplus for the pledgor; and as the note in the hands of the pledgor is void, all that ought to be recovered by the pledgee is the amount due on the loan made by it.  *Stoddard* v. *Kimball,* 6 Cush. 469.  *Fisher* v. *Fisher,* 98 Mass. 303.  *Chicopee Bank* v. *Chapin,* 8 Met. 40.

The defendants have contended that inasmuch as the plaintiff in this action recovers not on the strength of his own title but on the strength of the title of the pledgee, he cannot recover more

than the pledgee could have recovered if the action had been brought by it.

The pledgee had a right to look to the collateral note for payment of the loan made on the faith of it. It had the right to realize upon that collateral in either one of two ways, namely, by suing on the note deposited as collateral, or by selling the collateral note. If the pledgee sued on the collateral note, all that it could recover was the amount due it, because any surplus would belong to the pledgor. But (as we have said) the pledgee also had the right to realize on the collateral by selling it. If he sold it, he had the right in selling it to get payment in full for his loan even if the collateral sold for less than par. If the collateral sold for more than enough to pay the loan due the pledgee, the surplus would go not to the pledgor, who had no right to recover on the note, but to the parties liable on the note.

Of the cases which have come to our attention, *Trust Estate of Woods, Weeks & Co.* 52 Md. 520, and *Peacock* v. *Phillips,* 155 Ill. App. 514, are the nearest to the case at bar. But the collateral sold in both those cases was the pledgor's own notes. Moreover in *Trust Estate of Woods, Weeks & Co. ubi supra,* the pledgor had become insolvent and the question of double proof of the same debt in competition with other creditors arose, as to which see *Third National Bank of Boston* v. *Eastern Railroad,* 122 Mass. 240, and *Beals* v. *Mayher,* 174 Mass. 470. But that was not the case in *Peacock* v. *Phillips, ubi supra,* which was decided, to some extent at least, on the authority of *Third National Bank of Boston* v. *Eastern Railroad, ubi supra,* and the dissenting opinion in *Trust Estate of Woods, Weeks & Co. ubi supra.* However it may be, when the collateral sold is the note of the pledgor, we are of opinion that when notes of third persons are taken as collateral in good faith by the pledgee he can realize his pledge by a sale, and that the purchaser at such sale, buying under the pledgee's rights, can enforce the face amount of the notes although he bought for less than par. The purpose of a margin in the amount of the collateral is to meet such a contingency.

If in the case at bar a surplus was paid by the plaintiff to the Winnisimmet Trust, Inc., the defendants are entitled to it, and on application by them to the Winnisimmet Trust they can obtain

it. If they had wished to do so, they could have redeemed the note while it was in the hands of the Winnisimmet Trust by paying the amount lent by it on the faith of the note, in place of attempting to protect their rights by giving notice at the sale made by the trust company.

It follows that the plaintiff is entitled to recover the face amount of the note.

By the terms of the report judgment for the defendants is reversed and judgment must be entered for the plaintiff for the full amount of the note with interest from March 27, 1913; and it is

*So ordered.*