JOHN W. WEBB & another *vs.* GEORGE W. JOHNSTON & others.

Suffolk. January 17, 18, 1923. — September 14, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, & CROSBY, JJ.

*Equity Pleading and Practice*, Appeal; Master: findings. *Agency*, Existence of relation. *Equity Jurisdiction*, To set aside exchange of real estate for fraud. *Broker. Fraud.*

Upon an appeal from an interlocutory decree overruling exceptions to and confirming a report of a master to whom a suit in equity had been referred under a rule directing him " to hear the parties and their evidence, to find the facts, and report the same to the court," and from a final decree founded on the report, where no evidence was reported, the facts found by the master must be accepted as true unless on the face of his report they are mutually inconsistent or contradictory and plainly wrong.

In a suit in equity to rescind, by reason of fraud of one of the defendants, a real estate agent, an exchange of real estate and personal property between the plaintiff and a second defendant who held the record title for the benefit of a third defendant, a master found that the real estate agent had acted fraudulently toward the plaintiff, but that at no time was he employed by the third defendant as agent or broker for him in connection with the property of which he owned the beneficial interest, and that such defendant at no time authorized the agent to make any statements, concealments, or representations with reference to the character, condition, previous history, ownership, or any other facts relating to that property, except such representations as were contained in a typewritten statement obtained by him at the office of the third defendant, which were not found to have been false. Upon an examination of the subsidiary findings by the master, it

was *held*, that they were not inconsistent with the general finding, and that a decree dismissing the suit as to all defendants excepting the fraudulent real estate agent must be affirmed.

In the suit above described, it appeared that the third defendant did not know of the fraud of the real estate agent until the suit was brought; that, after the fraud had been committed upon the plaintiff, that defendant had agreed to and had paid to the real estate agent a commission for effecting the exchange; that the plaintiff, in ignorance of the fact that such commission had been paid and that the payment of two commissions in cases of exchange of properties was in accordance with the rules of a local real estate exchange, also had paid the agent a commission. *Held*, that, although the plaintiff was not bound by the rule of the real estate exchange in the circumstances, the acts of the third defendant did not require a finding of fraud on his part toward the plaintiff nor of responsibility by him for the previous frauds practised on the plaintiff by the real estate agent.

As part payment of a commission to the real estate agent in the transaction above described, the plaintiff gave a note secured by a mortgage. The agent sold the note before maturity and assigned the mortgage to one who was a *bona fide* purchaser for value and who on the same day sold the note and assigned the security to the third defendant, who knew that they had been received by the real estate agent as part of his commission but did not know of his fraud. *Held*, that the third defendant was entitled to enforce the note and the suit would not be maintained to enjoin him from doing so.

BILL IN EQUITY, filed in the Supreme Judicial Court on September 15, 1921, and afterwards amended, against George W. and Frederick C. Johnston (hereinafter called the Johnstons), John J. Johnston, John J. Keenan, George J. Wilson, Reuben S. Wyner and Walnut Avenue Garage, Incorporated, seeking to set aside an exchange of real and personal property between the plaintiffs and the defendants Johnston and to have cancelled a note and mortgage, which had been given by the plaintiffs as part of the transaction and which had come into the possession of the defendant, John J. Johnston.

The suit was referred to a master under a rule directing him " to hear the parties and their evidence, to find the facts, and report the same to the court." Material findings by the master and exceptions to his report are described in the opinion. The exceptions were heard by *Carroll*, J., by whose order there were entered an interlocutory decree overruling the exceptions and confirming the report and a final decree dismissing the bill as to all defendants excepting

Keenan, and ordering execution against him in favor of the plaintiffs in the sum of $14,675 damages and $38.59 costs. The plaintiffs appealed from both decrees.

*E. A. McLaughlin, Jr.*, for the plaintiffs.

*L. A. Mayberry,* (*W. F. Levis* with him,) for the defendants Johnston and Wilson.

RUGG, C.J.    This is a suit in equity for the rescission of an exchange of real estate and in the alternative for damages on the ground of fraud and deceit practised on the plaintiffs by the defendants.  The case was referred to a master under an order requiring him to find and report the facts without report of the evidence.  The plaintiffs have appealed from an interlocutory decree overruling their exceptions to and confirming the master's report and from a final decree awarding substantial damages against the defendant Keenan and dismissing the bill as to other defendants.

Since the evidence is not reported, the facts found by the master must be accepted as true unless on the face of his report they are mutually inconsistent or contradictory and plainly wrong.  *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334.

It has been found and is not now open to question that the plaintiffs were cheated out of considerable property in the exchange of real estate by the fraudulent misrepresentations made to them by Keenan.  The case hinges on the question whether the defendants Frederick E. and George W. Johnston, hereafter for convenience called the Johnstons, are responsible as principals for the fraud perpetrated on the plaintiffs by Keenan.  On this point the general finding was that the " defendant Keenan was at no time employed by the defendants George W. and Frederick E. Johnston as agent or broker for them either in connection with the Brookline property or otherwise.  At no time did they authorize him to make any statements, concealments, or representations with reference to the character, condition, previous history, ownership, or any other facts relating to that property, except such representations as were contained in the statement obtained by him at their office."  The main contention of the plaintiffs is that this finding cannot

stand in view of other specific facts found by the master. Keenan conceived the idea of getting the plaintiffs to exchange property belonging to them for two apartment houses in Brookline owned by the Johnstons but standing in the name of their straw man named Wilson. Keenan procured from the office of the Johnstons, who were real estate dealers operating in and about Boston, a typewritten statement (such as they commonly gave out concerning property they had for sale to anybody who asked) showing the actual gross income and the estimated or approximate expenses of their Brookline property. Keenan made the misrepresentations as to the Brookline property to the plaintiffs, who finally, on March 4, 1921, authorized him to see upon what terms the exchange could be made. Keenan procured them to sign a form of agreement as to the terms of exchange. On the morning of March 5, 1921, Keenan showed to the Johnstons the agreement signed by the plaintiffs and suggested to them the advisability of the proposed exchange. This was the first time the Johnstons had had called to their attention a proposition for such an exchange. Apparently they had never thought of it themselves and therefore had never known of the plaintiffs' property. After some discussion with Keenan they examined the property of the plaintiffs, made to Keenan a counter proposition, to which Keenan procured the assent of the plaintiffs. During the final of several interviews between Keenan and the Johnstons on March 5, 1921, the former said, " Of course you know that I am a broker in this matter. I will expect a commission from you as well as from Webb if this sale goes through." The reply was, " Of course, provided it goes through, we will pay you a commission." The misrepresentations to the plaintiffs by Keenan had all been made prior to this conversation between him and the Johnstons. Agreements for the exchange were signed in duplicate by both parties on March 5, 1921. The plaintiffs were wholly ignorant of the agreement of the Johnstons to pay a commission to Keenan, did not know that the Johnstons owned the Brookline apartment houses but supposed they were actually owned by the straw man, Wilson, and

were ignorant of the fraud practised upon them by Keenan.
Keenan collected a large commission from the plaintiffs
and was paid another large commission by the Johnstons.

It is a rule of the Boston Real Estate Exchange and the
practice among real estate brokers that a broker who brings
about an exchange shall be entitled to a full commission from
each party to the transaction. Keenan and the Johnstons
were familiar with this rule and practice, but there was no
evidence that the plaintiffs were aware of either. The
plaintiffs were not bound by such rule or custom. *Farns-
worth* v. *Hemmer*, 1 Allen, 494. *Hall* v. *Paine*, 224 Mass.
62, 73, 74.

These and other specific findings are not incompatible
with the general finding that Keenan was not employed as
agent or broker by the Johnstons in connection with the
exchange of the Brookline property. All the false repre-
sentations were made by Keenan before the Johnstons
agreed to pay him a commission. They acted throughout
in their own interests and did not employ Keenan to act for
them. Their payment of a commission under all the circum-
stances known to them does not require a finding of violation
of duty on their part toward the plaintiffs. *Rupp* v.
*Sampson*, 16 Gray, 398, 401. *Quinn* v. *Burton*, 195 Mass.
277, 280. *Tracey* v. *Blake*, 229 Mass. 57, 60.

The payment of the commission by the Johnstons to
Keenan in the circumstances here disclosed and the accept-
ance of the exchange by the Johnstons did not require a
finding of fraud on their part toward the plaintiffs nor of
responsibility by them for the previous frauds practised on
the plaintiffs by Keenan, which were unknown to them until
this suit was brought. *Tracey* v. *Blake*, 229 Mass. 57, 61.
*Combs* v. *Scott*, 12 Allen, 493. *Kelley* v. *Newburyport &
Amesbury Horse Railroad*, 141 Mass. 496. *Beacon Trust Co.*
v. *Souther*, 183 Mass. 413, 416. *Foote* v. *Cotting*, 195 Mass.
55, 61, 62. The case in this particular is distinguishable
from *Walker* v. *Russell*, 240 Mass. 386.

The ostensible powers of an agent are his real powers as
to persons dealing with him without knowledge of limita-
tions upon his apparent authority. *Brooks* v. *Shaw*, 197

Mass. 376. *Danforth* v. *Chandler*, 237 Mass. 518. But the harm suffered by the plaintiffs did not flow from acts of Keenan pursuant to any agency from the Johnstons.

On the facts found by the master the case at bar is distinguishable from cases like *Haskell* v. *Starbird*, 152 Mass. 117, *Weeks* v. *Currier*, 172 Mass. 53, and *Dzuris* v. *Pierce*, 216 Mass. 132, 134, so far as concerns the liability of the Johnstons.

The relation between the Johnstons and Keenan is not shown on the master's findings to have been quite close enough to render them responsible to the plaintiffs for his fraud. *Stewart* v. *Joyce*, 201 Mass. 301, 311. *New England Foundation Co.* v. *Reed*, 209 Mass. 556, 561, 562. *Jacobs* v. *Anderson*, 244 Mass. 125.

As part payment of his commission the plaintiffs gave a time note secured by a mortgage to Keenan. He sold the note before maturity and assigned the security to one Wyner, who is found by the master to have been a *bona fide* purchaser for value. Wyner in turn on the same day sold the note and assigned the security to one of the Johnstons, who paid value therefor and, although knowing that they were given to Keenan by the plaintiffs toward his commission in this transaction, had no knowledge at that time of any fraud or breach by Keenan of fiduciary relation to the plaintiffs. Under such circumstances the note can be enforced by the present holder. G. L. c. 107, §§ 74, 75, 79. *Fisher* v. *Fisher*, 98 Mass. 303. *Burnes* v. *New Mineral Fertilizer Co.* 218 Mass. 300. *Paika* v. *Perry*, 225 Mass. 563, 567.

What has been said disposes of all the points which have' been argued by the plaintiffs. The exceptions not argued are treated as waived. There is nothing in the record which requires a decree against the Johnstons.

No discussion is required to demonstrate that Keenan is liable to the plaintiffs for the full amount of damages suffered by them through his machinations. Every element of actionable deceit by one occupying a fiduciary relation is present in the findings of the master. *Kilgore* v. *Bruce*, 166 Mass. 136. *Thompson* v. *Barry*, 184 Mass. 429. *Lynch*

v. *Palmer,* 237 Mass. 150.   *Jeselsohn* v. *Park Trust Co.* 241
Mass. 388.   It has not been argued that there was error in
the measure of damages assessed against Keenan.   *Thomson*
v. *Pentecost,* 210 Mass. 223, and cases there reviewed.
*Vouros* v. *Pierce,* 226 Mass. 175.   *Lefevre* v. *Chamberlain,*
228 Mass. 294.

*Decrees affirmed.*