## MANUFACTURERS' & TRADERS' NAT. BANK OF BUFFALO v. GILMAN et al.

(Circuit Court of Appeals, First Circuit. July 7, 1925.)

No. 1838.

1. **Chattel mortgages ☞8—Whether instrument is mortgage or pledge is dependent on intent of parties.**

In determining whether an instrument is a mortgage or pledge, intent of the parties is to be considered.

2. **Chattel mortgages ☞8—Indenture providing for possession by trustee held to create pledge, rather than mortgage.**

An indenture of trust, by which debtor transferred to its manager, to hold as trustee for a creditor, certain marine engines, *held* to create a valid pledge, rather than a mortgage, in view of intention of the parties, especially as indicated by their conduct.

3. **Pledges ☞11—Failure of trustee under indenture creating pledge to tag property covered until week after execution of indenture immaterial.**

Where indenture, operating as pledge of marine engines to secure a loan, appointed manager of debtor as trustee to hold possession for creditor, that trustee did not place tags on engines, indicating his claim thereto, until a week after date of instrument, *held* of no consequence; property being already in his possession, held by him under terms of trust.

4. **Pledges ☞11—Indenture held not to constitute valid pledge as to engines not tagged and set apart from other property.**

Indenture appointing manager of debtor trustee to take and hold possession of marine engines in behalf of creditor to secure loan

*held* not to effect valid pledge of engines, which were not assembled nor tagged and set apart from other property of the debtor.

**5. Pledges ⬅11—Delivery of marine engines by manufacturer to its manager as trustee for a creditor sufficient.**

Where indenture, pledging marine engines to secure loan, appointed manager of manufacturer as trustee for creditor, storing of specific engines in warehouse of debtor, to which manager was given key and exclusive control thereover, *held* sufficient delivery, notwithstanding employees, on occasions, entered room of warehouse for other material not covered by pledge, presumptively with consent of manager, for special purpose of getting material.

**6. Pledges ⬅25—Surrender by trustee of key of warehouse in which pledged goods were stored held not to destroy pledge.**

Where marine engines were pledged by manufacturer to secure loan, and its manager appointed trustee for creditor, delivery of key of warehouse in which engines were stored to receiver of manufacturer by manager, *held* not to destroy pledge, in absence of showing that delivery was authorized by pledgee or ratified, especially as receiver was entitled to key because of other goods besides pledged property in storeroom.

**7. Pledges ⬅25—Possession of receiver not adverse to that of pledgee.**

Where manager of manufacturer of marine engines, who was trustee and had possession of certain engines in warehouse for pledgee, delivered key of warehouse to receiver of manufacturer, possession of latter, as officer of court, was that of court which appointed him, and property in his hands was in custody of the law, to be held for those ultimately entitled, and was not adverse to that of the pledgee.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Petition by Harris H. Gilman, ancillary receiver, and others, against the Manufacturers' & Traders' National Bank of Buffalo. Decree for petitioner, and defendant appeals. Reversed and remanded, with directions.

Allan Robinson, of Boston, Mass. (Coggan & Coggan, of Boston, Mass., on the brief), for appellant.

Harris H. Gilman, of Boston, Mass. (Robert R. Duncan, of Boston, Mass., on the brief), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and MORRIS, District Judge.

JOHNSON, Circuit Judge. This is an appeal from a final decree of the District Court of the United States for the District of Massachusetts. It is here upon an agreed statement of facts, from which it appears that the National Motors Corporation, a Delaware corporation having a manufacturing plant in Quincy, in the commonwealth of Massachusetts, known as the Murray & Tregurtha plant, for the manufacture of marine engines, being indebted, through some of its subsidiary companies, to the Manufacturers' & Traders' National Bank of Buffalo, in the state of New York, for which the bank desired further security, on the 25th day of July, 1923, executed what is styled an "indenture of trust," by which it delivered to one Gladwin, its general manager, to hold as trustee for the Manufacturers' & Traders' National Bank, ten engines, completely assembled, bearing the following numbers: 102, 103, 104, 105, 106, 107, 118, 119, 143, and 147—valued at $7,500 each; also three engines, bearing numbers 145, 146, and 149, assembled to the extent of 75 per cent., and valued at $5,625 each; also complete parts for two engines in the stock room, valued at $6,500 each, to secure the payment of its note for $50,000, dated July 25, 1923, due six months after date, bearing interest at the rate of six per cent. per annum, and given to said bank as further security for paper of its subsidiary companies held by the bank.

Approximately a week after the execution of this instrument all of said property, except the unassembled parts of two engines, was tagged as follows: "Property of N. B. Gladwin, Trustee." On August 3, 1923, Gladwin notified the bank that said property had been tagged as above, and that he would "hold same subject to the order of the Manufacturers' & Traders' Bank," and also sent a similar notice to the vice president of the National Motors Corporation. This indenture was never recorded with the city clerk of the city of Quincy nor elsewhere.

In the early part of January, 1924, all the engines that had been tagged, but not the unassembled parts, were transferred from the stock room in the Murray & Tregurtha plant to the shipping room, which room was locked and the key thereto tagged with a tag which had on one side: "Key to shipping room rented to Manufacturers' & Traders' National Bank of Buffalo, New York;" and on the other: "N. B. Gladwin." This key was kept in the safe of the company and under the control of the manager. The engines were then retagged as follows:

"Property held by Nelson B. Gladwin, Trustee, under and in accordance with the terms of indenture of pledge entered into between National Motors Corporation and

Nelson B. Gladwin under date of July 25, 1923."

The old tags were also allowed to remain on them.

On January 5, 1924, the following book entry was made in the books of the National Motors Corporation:

"Cash ................... $5.00   $5.00

M'frs.' & Traders' Nat. Bank of Buffalo

"Received above from Manufacturers' & Traders' National Bank of Buffalo, monthly rental in advance of space in testing room for storage of engines and other property held by Nelson B. Gladwin, as trustee under and in accordance with indenture of pledge dated July 25, 1923, between National Motors Corporation and himself. The space referred to by mutual understanding has been orally leased indefinitely to the said trustee at a monthly rental of $5 per month, payable in advance the 1st of each month."

A bill for $5 was sent to the bank and paid by it on January 21, 1924; but no other bill was ever rendered to the bank, and it has never tendered any further rental.

There were other materials belonging to the National Motors Corporation in the shipping room, to which it was necessary for employees of the company to have access upon occasion.

On February 1, 1924, Harris H. Gilman was appointed ancillary receiver of the National Motors Corporation, and took charge of the assets of the company which were located in Massachusetts. Gladwin continued in the employ of the receiver until March 1st, and when he left the employ of the receiver he turned over to him the key to the shipping room, in which the engines were located, and the receiver has since had possession of it. From the time said property was tagged and retagged to the time of the appointment of the receiver, the National Motors Corporation exercised no acts of ownership over the property described in the indenture of trust.

Harris H. Gilman, the receiver, filed a petition in the District Court, praying that the claims of the Manufacturers' & Traders' National Bank of Buffalo and N. B. Gladwin in and to the marine engines described in the indenture of trust be adjudged invalid and groundless as against the receiver, and that they be enjoined from setting up any claim to said engines. Upon this petition the court decreed:

"First. That the prayer of said receiver be granted, and that said receiver has the same title to and possession of said marine engines, and the same right to sell and dis-

pose of the same, as he has to other similar personal property of National Motors Corporation in his possession as receiver, with certain limitations hereinafter set forth.

"Second. That the receiver be authorized to sell and dispose of said marine engines to such parties and in such manner as he may now sell and dispose of other similar personal property of said National Motors Corporation which has come into his hands as receiver, except that he shall notify counsel for said Manufacturers' & Traders' National Bank and N. B. Gladwin of any contemplated sale, for the purpose of agreeing upon the sale price therefor, if possible. If such agreement as to price cannot be reached, the price shall be determined by further order of this court. Upon the sale of any said engines, the proceeds thereof shall be deposited in a special account, and the funds therein shall be held subject to the same rights that said Manufacturers' & Traders' National Bank and N. B. Gladwin may be found to have, if any, in and to the said marine engines above set forth, upon appeal to the United States Circuit Court of Appeals, if an appeal thereto is duly perfected."

The decree, in so far as it adjudges that the receiver had the same title to and possession of the engines in question, and the same right to sell and dispose of the same, as of other similar personal property of the National Motors Corporation in his possession as receiver, is assigned as error, and also that the court did not find and decree that the Manufacturers' & Traders' National Bank and N. B. Gladwin, as trustee, had a lien upon said engines and other property by way of pledge superior to the rights of the said receiver.

It is contended by the appellee: First, that the indenture created a mortgage, which was void, because of failure to record: Second, if the indenture was an agreement to pledge, that the rights, if any, acquired by the trustee, Gladwin, were lost by the surrender of the possession of the property to the receiver.

[1, 2] Under the first claim it is argued that the indenture created a mortgage, and not a pledge. This instrument contains the words "mortgage" and "pledge" at different places throughout. The instrument in question seems to be loaded with unnecessary verbiage; but, reading it in the light of the conduct of the parties, we think it was their intent to create a pledge and that this was done. In determining whether the instrument was a mortgage or pledge, the intent of the parties is to be considered. Ward v.

Sumner, 5 Pick. (Mass.) 59; Sumner v. Hamlet, 12 Pick. (Mass.) 76.

The whole scheme of placing the property in the hands of Gladwin, as trustee, to hold in trust for the bank as security for the payment of the note held by it, and of providing that, when the note, with interest, was paid, the property should revert to the company, plainly partakes more of the nature of a pledge than a mortgage. This was the construction placed upon it by the parties, for, when the property was retagged in January, 1924, the indenture was referred to as a "pledge," and it was so designated in the entry upon the books of the company, made when entering the receipt of the first monthly rental of $5. The delivery of possession to Gladwin, although an employee of the company, created a valid pledge.

In Sumner v. Hamlet, supra, the goods claimed to be pledged were delivered to an agent of the pledgor, and the court said:

"Whatever was the nature of his general relation to the proprietors of the manufactory, in this particular transaction he was constituted the special agent of the defendant, for the purpose of keeping possession for him, although in other respects the servant of Stanley & Co., and, pursuant to the power thus given him, he was both authorized and bound to retain the goods against the original proprietors, for the use of the defendant. To constitute such special possession, it was not necessary that the goods should be removed from the premises of the former owners; it was sufficient that they were so far in the custody of the special bailee that he could at all times have legal control of them, and give notice of the lien to any purchaser and attaching creditor, and remove the goods, if such removal should be necessary for the safety of the principal."

[3] That Gladwin should act as trustee was agreed upon by the parties and he accepted the trust, as appears from the notice which he gave to both, and also from his act in tagging the property so that it might be identified. That he did not place tags upon it until about a week after the date of the instrument is of no consequence, as the property was already in his possession and held by him under the terms of the trust. By tagging the property he not only made its identity certain, but also gave notice that it was not in possession of the company, but held by him in trust. In doing this he was not attempting to change the nature of the transaction from that of a mortgage to a pledge, but was evidently acting in accordance with the understanding of the parties.

7 F.(2d)—7

[4, 5] As to the two engines, which were not assembled, and which were not tagged and set apart from other property of the company, there was no valid pledge. While the extent and validity of a pledge is a matter of local law, we find nothing in the decisions of the Supreme Judicial Court of Massachusetts which would not uphold delivery to Gladwin, as trustee for the bank, as sufficient to constitute a valid pledge. He thereafter had exclusive control over the property and the room in which it was stored, and under the facts agreed the company exercised no control over it, and, although employees, upon occasions, entered the room for other material not covered by the pledge, it was presumably done with the consent of Gladwin, the manager, for the special purpose of getting this material.

[6] It is claimed, if a valid pledge was created, the lien of the pledgee was lost when Gladwin surrendered the key to the storeroom to the receiver in which the pledged property was stored. The record is silent as to what was said by Gladwin when he delivered the key. It was, however, admitted at the oral argument that the receiver knew the bank claimed that the engines were pledged to it when the key was delivered to him. There is nothing in the record to show that Gladwin's act was authorized by the pledgee, or that it ever ratified any release of its possession.

[7] As an officer of the court, the possession of the receiver was that of the court which appointed him, and the property in his hands was in the custody of the law, to be held for the benefit of those ultimately entitled to it, and the possession of the receiver was not adverse to that of the pledgee. Porter v. Sabin, 149 U. S. 473, 13 S. Ct. 1008, 37 L. Ed. 815; Union Bank of Chicago v. Kansas City Bank, 136 U. S. 223, 236, 10 S. Ct. 1013, 34 L. Ed. 341.

As there were other goods beside the pledged property in the storeroom, the receiver was entitled to the key to it, and to hold all of the property in it until the rights of the parties could be determined.

The decree of the District Court is reversed, and the case is returned to that court, with directions to enter a decree that N. B. Gladwin has the right to the possession of all the property described in the exhibit attached to the indenture of trust, except the parts of the two engines which were not tagged, to hold in trust for the Manufacturers' & Traders' National Bank, under the terms of said indenture of trust; the appellant to recover costs in this court.