## STATE TRUST & SAVINGS BANK .v. DUNN.

Circuit Court of Appeals, Fifth Circuit.
March 2, 1928.

Rehearing Denied March 17, 1928.

No. 5086.

1. Bankruptcy ⬤⟳302(1)—Bill by trustee, alleging title to certain collaterals transferred by bankrupt within the four-month period to defraud creditors, held to state cause of action (Bankr. Act, § 67e [11 USCA § 107]).

In suit by trustee in bankruptcy to recover certain collaterals or their value, bill alleging that trustee had title and averring that collaterals were transferred by bankrupt within four months of filing petition with intent to hinder, delay, and defraud creditors, *held* to state cause of action under Bankruptcy Act, § 67e (11 USCA § 107).

2. Bankruptcy ⬤⟳293(2)—Federal District Court was required to take jurisdiction and decide equities, where bill by trustee stated cause of action (Bankr. Act, § 67e [11 USCA § 107]).

Where trustee's bill to recover collaterals stated cause of action under Bankruptcy Act, § 67e (11 USCA § 107), on theory of preference, federal District Court was required to take jurisdiction and to decide equities of case.

3. Bankruptcy ⬤⟳293(1)—Trustee's suit to recover collaterals, bought in by bankrupt's pledgee after adjudication, held within jurisdiction of federal District Court (Bankr. Act, §§ 67e, 70 [11 USCA §§ 107, 110]).

Suit by trustee to recover certain collaterals pledged by bankrupt, or their value, from pledgee, which bought in collaterals after adjudication, *held* within jurisdiction of federal District Court, since title to the collaterals passed to the trustee with the adjudication, under Bankruptcy Act, § 70 (11 USCA § 110), and property was constructively in court's custody, subject to its determination as to extent and character of liens thereon, regardless of whether bill stated cause of action to recover preference, under section 67e (11 USCA § 107).

4. Bankruptcy ⬤⟳143(1)—Title to collaterals pledged by bankrupt passes to trustee on adjudication (Bankr. Act, § 70 [11 USCA § 110]).

Under Bankruptcy Act, § 70 (11 USCA § 110), trustee acquires title, on adjudication in bankruptcy, to collaterals pledged by bankrupt, which pledgee continues to hold for bankrupt's account.

5. Pledges ⬤⟳56(5)—Pledgee sells securities pledged for pledgor's benefit and may not sacrifice property.

Pledgee occupies a fiduciary relation to the pledgor, and, in making sale of securities pledged, does so for pledgor's benefit, and may not sacrifice property or purchase it at grossly inadequate valuation.

6. Pledges ⬤⟳56(5)—Pledgee, given right to buy in collaterals without notice, could not sacrifice property or purchase it at grossly inadequate valuation.

Pledgee, given right to sell collaterals pledged without notice and to buy them in itself, was nevertheless bound to exercise good faith towards pledgor, and could not sacrifice property wantonly, or purchase it at a valuation so inadequate as to suggest fraud.

7. Pledges ⬤⟳56(5)—Pledgee, bidding in for amount of debt collaterals pledged by bankrupt without notice to trustee, who, pledgee knew, desired to redeem collateral for substantial equity therein, held guilty of fraud.

Where pledgee knew that value of security pledged by bankrupt far exceeded amount of debt, and knew that bankrupt's trustee desired to redeem collateral for the benefit of the estate, conduct of pledgee in refusing trustee opportunity to pay note, and in bidding in property itself without notice to trustee and for amount of secured debt, which was grossly inadequate price, constituted fraud and bad faith, since trustee should at least have been given opportunity to make a bid, though pledge agreement permitted sale without notice.

8. Bankruptcy ⬤⟳305—Pledgee, buying in pledged collaterals for amount of debt, held liable to pledgor's trustee in bankruptcy, not notified of sale, for value of collaterals less debt.

Where bankrupt's pledgee, knowing collaterals pledged had value in excess of amount of loan, and knowing that trustee desired to redeem, nevertheless refused trustee opportunity to pay the note and held private sale without notice, at which it bid in collateral for amount of debt, trustee was entitled to recover amount collected by pledgee from pledged collaterals less amount due on the principal note, together with collaterals remaining undisposed of.

Appeal from the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

Suit by C. A. Dunn, trustee of the Investment Bond & Mortgage Company, a bankrupt, against the State Trust & Savings

Bank. From a judgment for plaintiff, defendant appeals. Affirmed.

Webster Atwell, of Dallas, Tex., for appellant.

Rosser J. Coke, of Dallas, Tex., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. Appellee, as trustee, brought suit to recover certain collaterals, alleging title to same to be in him as trustee, and also averring that they had been transferred by the bankrupt within four months prior to the filing of the petition, with intent and purpose on its part to hinder, delay, and defraud its creditors, in violation of the provisions of section 67e of the Bankruptcy Act (11 USCA § 107). In the alternative, the bill prayed for an accounting and for recovery of the value of the collaterals, less any amount found to be due appellant.

The record supports the following conclusions as to the material facts proven:

On December 7, 1923, the Investment Bond & Mortgage Company, the bankrupt, through its president, C. C. Waller, and its secretary-treasurer, W. F. Bland, executed a note payable to the order of the said Waller for $10,000, payable on December 7, 1924, with interest at the rate of 10 per cent. per annum from maturity until paid, and with the usual provision for 10 per cent. attorney's fees. An agreement was also drawn up pledging certain 3 per cent. vendor's lien notes, secured by mortgages on residences in Fort Worth, owned by the bankrupt, as security for the note. These securities were of the face value of over $22,500, were payable pro rata at stated intervals, and were conservatively estimated to be worth about 75 per cent. of their face value. Waller indorsed and negotiated this note with the State Trust & Savings Bank, appellant, and assigned the pledge agreement, through the intervention of G. E. McGregor, who was paid $500 for his services, at a discount of $1,500. A fee of $100 was also paid the bank's attorney for services in the transaction. The net result to the bankrupt was $7,900.

The pledge agreement contained clauses permitting the acceleration of the maturity of the note in the event of insolvency of the maker, authorizing the sale of the securities without notice, and allowing the pledgee to become the purchaser of same. The negotiations for discounting the note extended over some days, as the bank took time to investigate, but were probably concluded on December 10, 1924. However, no money was advanced by the bank until December 12, 1924, when part of the collaterals were delivered and $4,000 was credited. Another credit of $3,000 was given on January 23, 1925, when additional collaterals were delivered, and the last credit of $1,500 was made on March 5, 1924, when delivery of the collaterals was completed. As payments were made on the collateral notes, they were credited to the principal note and indorsed on the back; the total credits from this source amounting to $1,403.79.

The Investment Company was in fact insolvent at the time the note and pledge agreement were made and delivered to the bank, and was adjudicated bankrupt on April 12, 1925. Appellee was first appointed receiver, and later trustee, and qualified as such. He took up with appellant the question of paying off the note and redeeming the collateral, and offered to do so. At that time he had a purchaser able and willing to buy the collaterals for over $12,000. Appellant, however, declined to do anything to facilitate the liquidating of the note.

Appellant did not file a proof of debt in the bankruptcy proceedings, but on April 19, 1925, went through the form of selling the collaterals in the office of its attorneys, Huvelle & Atwell, at Dallas, without appraisal of the securities, without demand for payment of the note, and without notice to the trustee, or to any one, as to the acceleration of the maturity of the note or the intended sale. There was no one present at the sale, except Mr. Huvelle and a representative of the bank, and the collaterals were bought in by the bank for the amount due on the note, with attorney's fees, and without any adjustment of the interest which had been paid in advance. The bank had collected $13,647.92 on the collaterals, and still held collateral notes aggregating $4,216.60, with accrued interest, when the case was tried.

There was judgment in favor of appellee for the amount collected by the bank on the notes pledged, less the amount due on the principal note, and ordering delivery of the collateral notes still held by appellant.

[1-4] It is contended by appellant that the District Court was without jurisdiction. The allegations of the bill were sufficient to show a cause of action arising under section 67e of the Bankruptcy Act. We may put aside consideration of the merits as to that part of the bill, not as being without substance, but as unnecessary to be decided. That as-

serted ground of jurisdiction required the District Court to take jurisdiction initially, and, having done so, to decide the equities of the case. Flanders v. Coleman, 250 U. S. 223, 39 S. Ct. 472, 63 L. Ed. 948. In addition thereto, the bill was brought to recover assets of the bankrupt, title to which was alleged to have been in the trustee. Regardless of what transpired thereafter, at the moment of adjudication appellant had no title to the collateral notes, except that of a pledgee holding a lien to secure the loan, and held them for account of the bankrupt. The title to the collaterals passed to the trustee with the adjudication, under the provisions of section 70 of the Bankruptcy Act (11 USCA § 110), and the District Court had jurisdiction to determine any controversy in relation to same, and the extent and character of the liens thereon, and the rights therein, as the property was constructively in the custody of the court. Whitney v. Wenman, 198 U. S. 539, 25 S. Ct. 778, 49 L. Ed. 1157.

[5, 6] Conceding for the sake of argument that appellant had the right to sell the collaterals without notice and buy them in, in doing so it was bound to exercise good faith. A pledgee occupies a fiduciary relation to the pledgor, and in making a sale of securities pledged does so for the benefit of the pledgor. No matter how unlimited the authority of a pledgee to sell may be, he cannot sacrifice the property wantonly, or purchase it himself at a valuation so inadequate as to suggest a fraudulent purpose. Pauly v. State Loan & Trust Co., 165 U. S. 606, 17 S. Ct. 465, 41 L. Ed. 844; Hiscock v. Varick Bank, 206 U. S. 28, 27 S. Ct. 681, 51 L. Ed. 945; Dibert v. Wernicke (C. C. A.) 214 F. 673, and authorities cited.

[7] Appellant knew that the value of the security pledged far exceeded the amount due it. It knew that the trustee desired to redeem the collateral, and that there was a substantial equity in it for the benefit of the estate. The trustee was able to secure a purchaser at a price exceeding the debt due appellant, and could have bid, or have had some one bid, for his benefit, at the sale of the collateral, had he been notified and afforded an opportunity to do so. In the exercise of good faith, appellant should have allowed appellee a fair opportunity to pay the note and redeem the securities, or at least to bid upon them at the sale.

[8] On the facts in this case it is apparent the action of appellant in selling the collaterals without notice and buying them in at a grossly inadequate price was uncon-

scionable and fraudulent in law. It obtained no rights thereby that it did not already have, and the judgment appealed from fully protects those rights.

Affirmed.