DAVID J. SEDER *vs.* LOUIS GOULD & another.

Worcester.   September 22, 1930. — January 14, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Bills and Notes*, Collateral.   *Pledge*, Foreclosure.

A promissory note authorized its holder, upon default, to sell the collateral security pledged with it and to become a purchaser at such a sale. As collateral security, the maker indorsed to the payee a second note payable to him and secured by a real estate mortgage, which he also assigned. Upon subsequent default by the maker of the first note, the payee thereof sold the second note and mortgage for a certain sum to himself, complying in good faith with all the formalities required for such a sale, and credited that sum upon the first note. There later being a default under the mortgage, he foreclosed it by a sale at which he was purchaser. Later, in a suit in equity to enforce the first note, a decree was entered directing the maker to pay the entire balance then due to the payee. The maker satisfied that decree in full. In a subsequent suit in equity by the same plaintiff, as indorsee of the second note, against the same defendant, as indorser thereof, to recover a deficiency left due thereon after the foreclosure sale under the mortgage, it was *held*, that
 (1) The plaintiff was no longer a mere pledgee of the second note, but had become the owner thereof by reason of its sale to him; the trust relation of pledgee to pledgor had ceased;
 (2) The plaintiff was entitled to recover the balance still due on the second note.

BILL IN EQUITY, filed in the Superior Court on April 6, 1929, and described in the opinion.

The suit was heard by *Whiting*, J., upon an agreed statement of facts and oral testimony, a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 29 (1926). Material facts, rulings given and refused and a final decree entered by order of the judge are described in the opinion. The defendant Gould appealed.

The case was argued at the bar in September, 1930, before *Rugg*, C.J., *Crosby*, *Pierce*, *Sanderson*, & *Field*, JJ., and afterwards was submitted on briefs to all the Justices.

*G. E. O'Toole,* for the defendant Louis Gould, submitted a brief.

*S. A. Seder,* for the plaintiff.

SANDERSON, J. This is a bill in equity to reach and apply certain assets of the defendant Gould, who will hereafter be referred to as the defendant, in payment of an alleged indebtedness based in part upon a judgment obtained by default for the amount of quarterly payments accrued on a note for $17,170 and in part upon instalments becoming due thereon after that judgment was obtained. The case was submitted on an agreed statement of facts, admitted allegations in the bill and oral evidence.

On March 12, 1927, the defendant borrowed $8,000 from Joseph S. Seder and Samuel Seder and gave them his note for that amount. As collateral security for the payment of the loan he indorsed to them, waiving demand and notice, the note for $17,170 above referred to, made by one Isador Katz, payable to the order of the defendant and secured by a real estate mortgage, which also was duly assigned to the Seders. The principal note authorized its holder, on default, to sell the collateral with ten days' notice either at public or private sale, giving the defendant credit for any balance of the net proceeds of such sale remaining after paying all sums due from the defendant to the holder; and provided that the holder could purchase at such sale. On July 29, 1927, owing to a default on the part of the defendant in complying with the terms of the principal note, the pledgees duly sold the collateral note and mortgage in accordance with the terms of the principal note, for $5,000, becoming the purchasers themselves, and gave the defendant credit for that amount on the principal note. Subsequently there was a default in the terms of the mortgage note and the note and mortgage securing the same were assigned without consideration to a clerk in the office of the pledgees for the purpose of foreclosure. On October 14, 1927, the clerk duly foreclosed the mortgage under the statutory power of sale contained therein, and the property was

purchased for $6,700 by the plaintiff who was the highest bidder.

The trial judge found that after taking possession and before the foreclosure sale the Seders expended for water rates, taxes, necessary repairs and expenses of foreclosure, above any income received from the property, the sum of $2,586.97 which should be deducted from the $6,700 received at the foreclosure sale.

On November 19, 1927, a bill in equity was brought by the plaintiff against the defendant to recover $3,000, the balance due on the principal note, and a decree for that amount with interest and costs was entered, which the defendant satisfied, fully discharging his liability on that note. In November, 1928, and before final payment on the principal note, the plaintiff, to whom Joseph S. and Samuel Seder had delivered the collateral note for purposes of suit, obtained a judgment by default against the defendant for certain instalments due upon the mortgage note. The plaintiff is a son of Joseph S. Seder and a nephew of Samuel Seder.

It was agreed that this bill was brought in the name of the plaintiff for the convenience of all the parties; that there was no consideration for the transfer of the note from Joseph S. and Samuel Seder to David J. Seder; and that any defence which would be available to the defendant if this bill were brought by Joseph S. and Samuel Seder is available as against the present plaintiff. Either or all of them will be referred to as the pledgees unless otherwise designated.

The judge found or ruled as requested by the plaintiff that he became the absolute owner of the mortgage note in question and as owner had a right to sue for the amounts due thereon without reference to the original obligation of the defendant, and was entitled to sue the defendant on his indorsement. He found as requested by the defendant that the holder of the collateral note is the same person as the holder of the principal note. He denied the defendant's requests for rulings that the plaintiff cannot recover; and that if the principal note has been

paid in full the plaintiff can enforce no rights against the defendant on the collateral note. Because of his finding that the collateral note and mortgage had ceased to be collateral before the principal note was paid, he declined to give the defendant's requests: "If the holder of the collateral note is the same person as the holder of the principal note, he can enforce no rights against the defendant on the collateral note after the principal note has been fully paid," and "A judgment at law in favor of the holder of the collateral note which was obtained in a suit at law against the defendant cannot be enforced if said holder has subsequently received payment of the principal note in full from the defendant."

It is recited in the findings of fact and order for a decree filed by the judge that the parties agreed that unless the judge found that the plaintiff was entitled to recover for the instalments of principal and interest set forth in the second paragraph of the bill, there should be no recovery under the first paragraph on the judgment therein referred to which had been obtained by default; and that no question would be raised whether at the time of the bringing of the bill the interest or instalments then due on the collateral note had been paid. A final decree was entered adjudging that the defendant is liable to the plaintiff in the sum of $5,155.38 with costs in the sum of $17.50, and that execution issue therefor. The decree further ordered that the bill be dismissed as against the defendant Mayberry with costs. The defendant Gould appealed from the final decree and from the denial of his requests for rulings to which reference has been made.

The pledgees, having purchased the note at a sale made in accordance with the power given in the pledge agreement and having credited the purchase price on the principal obligation, seek recovery as owners. The contention of the defendant that the sale of the collateral to the pledgees was not a valid sale but a mere form cannot be supported on this record. The parties have agreed that the mortgage and note "were duly sold on July 29, 1927, in accordance with the terms" of the principal note. This

must be held to mean that the defendant was given ten days' notice of the sale and that the pledgees acted in good faith and complied with all of the requirements of the contract and of the law in making the sale. The question to be decided is whether after the sale of the note and mortgage these securities lost their character as collateral and became the absolute property of the pledgees.

If the holders had not been given the right to purchase at the sale they would have gained at most only a voidable title. *Middlesex Bank* v. *Minot,* 4 Met. 325. *Lord* v. *Hartford,* 175 Mass. 320. The purpose of the agreement giving the holders of the collateral the right to become the purchasers was to enable them to gain an absolute title if they complied with all of the requirements of law in making the sale. The agreement in a mortgage giving the mortgagee the right to buy at a foreclosure sale enables him if he purchases the property at such a sale properly conducted to get an absolute title even though the price paid is less than the value of the property. *Hall* v. *Bliss,* 118 Mass. 554, 558, 561. *McCarthy* v. *Simon,* 247 Mass. 514, 521, 522. *Steiner* v. *Schrank,* 253 Mass. 551. *Gordon Grant & Co. Ltd.* v. *Boos,* [1926] A. C. 781. The same principle is applicable in case of a pledge. *Farmers National Bank of Annapolis* v. *Venner,* 192 Mass. 531. In this case the court said at page 537: " The note provided expressly that the pledgee might purchase at any sale of the collateral, and there is nothing, therefore, in the fact that the plaintiff bank was the purchaser to invalidate the sale." As a general rule, an authorized and properly conducted sale of collateral by the pledgee, either to a third person or to himself, passes a valid title. *Jennings* v. *Wyzanski,* 188 Mass. 285. *Jewett* v. *Geiger,* 263 Mass. 525, 528. *Colonial Trust Co.* v. *Central Trust Co.* 243 Penn. St. 268. *Wade* v. *Chicago, Springfield & St. Louis Railroad,* 149 U. S. 327; 49 C. J. 1008.

In *Burnes* v. *New Mineral Fertilizer Co.* 218 Mass. 300, 304, the court said: " However it may be, when the collateral sold is the note of the pledgor, we are of opinion that when notes of third persons are taken as collateral

in good faith by the pledgee he can realize his pledge by a sale, and that the purchaser at such sale, buying under the pledgee's rights, can enforce the face amount of the notes although he bought for less than par." In the cases cited in connection with this statement the pledgors were the makers of the notes involved, and the opinion did not undertake to decide what the law would be in case such notes were given as collateral. When the pledgor is the payee of a note and indorses and delivers it as collateral security, it would not seem to be the note of the pledgor in the ordinary meaning of that expression, even though he waives demand and notice. As such indorser, even though he has waived demand and notice, his liability on the note is secondary and not primary within the meaning of G. L. c. 107, § 19. *Maglione* v. *Penta*, 266 Mass. 413, 416. Bigelow on Bills, Notes & Checks (3d ed.) § 70. If the indorser is obliged to pay the note, the ultimate liability does not rest on him but he has his right of action against the maker. G. L. c. 107, § 144. The fact of the maker's insolvency does not affect the legal rights and obligations of the indorser. The pledgee may gain an absolute title as purchaser at a sale of collateral even though it consists of life insurance policies or of the pledgor's own bonds. *In re Mertens*, 144 Fed. Rep. 818. *Turner* v. *Metropolitan Trust Co. of New York*, 207 Fed. Rep. 495.

In *Commercial-German Trust & Savings Bank* v. *Conner*, 114 Miss. 644, certain notes owned by the pledgor were pledged as collateral to secure the payment of the principal debt with the right in the pledgee to purchase the pledged securities. After default in the payment of the principal debt the pledged securities were sold by the pledgee who became the purchaser and was held thereby to have gained a valid title.

*In re Estate of Wood, Weeks & Co.* 52 Md. 520, a part of the securities pledged consisted of the pledgors' own notes payable to their own order and indorsed in blank. The pledgees in pursuance of the power sold the notes after

maturity and applied the proceeds to the payment of the indebtedness. The purchasers were held to be entitled to prove their claim against the estate of the pledgors in bankruptcy for the full amount of the notes.

In *Turner* v. *Metropolitan Trust Co. of New York,* 207 Fed. Rep. 495, the court said at pages 499, 500: " The attempt to make a distinction between the rule which governs contracts of pledge, where the pledgor prefers to pledge its own mortgage bonds as collateral, and that which governs such contracts, where the pledgor pledges the bonds of another corporation, is not well founded. The contract measures the rights of the parties; and where the expressed intention is that in case of foreclosure the bonds deposited may be sold as existing securities, and the pledgee is given the right to become the purchaser, why should there be any less good title conveyed to such purchaser than if he were selling the bonds of another corporation? The reason for permitting the pledgee to become a purchaser is to permit him to buy the bonds, if he should wish to do so, at a price higher than any one else will pay for them . . . . A sale divests the title of the pledgor and gives to the purchaser a good title to the property pledged." Knowledge by the buyer of a note, sold in accordance with authority given in a pledge agreement, that it was held as collateral and had been pledged in violation of the small loans act (St. 1911, c. 727, § 17, as amended by St. 1912, c. 675, § 5; see now G. L. c. 140, § 110) to a pledgee who had no knowledge of any irregularity in connection therewith was held in *Burnes* v. *New Mineral Fertilizer Co., supra,* not to be notice to the buyer of any infirmity in the note or defect in the title thereto. The rule adopted in Illinois as to the right of the pledgee to sell collateral seems to be more limited than that which has prevailed in this Commonwealth. *Peacock* v. *Phillips,* 155 Ill. App. 514; 247 Ill. 467.

The record does not disclose what issues were tried in the suit brought to recover the balance of $3,000 due on the principal note. It would seem that, if the conten-

tion was to be made that the sale to the plaintiff was invalid for any reason, the question should have been raised in that suit and that the defendant by accepting as a credit on the original note the amount paid by the pledgees for the collateral must be held to have affirmed the sale of it to them.

Upon all of the facts in the case, when the pledgees became the purchasers of the collateral their trust relationship to the defendant so far as that property was concerned came to an end. See *Steiner* v. *Schrank,* 253 Mass. 551, 552. They no longer were the holders of a lien upon it within the meaning of G. L. c. 107, § 50, but had become the owners and entitled to the rights of an owner. The case is distinguishable in its facts from those defining the duties and obligations of the holders of collateral securities before they have been sold to satisfy the pledgor's debt and thus lost their character as collateral, as well as from those where proof of claims in bankruptcy or special statutes are involved. *Third National Bank* v. *Eastern Railroad,* 122 Mass. 240. *Merchants' National Bank* v. *Eastern Railroad,* 124 Mass. 518. *Costelo* v. *Crowell,* 134 Mass. 280, 285. *Union Cattle Co.* v. *International Trust Co.* 149 Mass. 492. *Jennings* v. *Wyzanski,* 188 Mass. 285. *Union Trust Co.* v. *Hasseltine,* 200 Mass. 414. *Ex parte Farnsworth,* 1 Lowell, 497. In the opinion of a majority of the court the decree was right.

*Decree affirmed with costs.*