**GINS v. MAUSER PLUMBING SUPPLY CO., Inc., et al.**

No. 277.

Circuit Court of Appeals, Second Circuit.

April 17, 1945.

Montrose H. Massler, of New York City (Krause, Hirsch, Levin & Heilpern and Elliot L. Krause, all of New York City, on the brief), for plaintiff-appellant.

Daniel Levy, of New York City (Milton Goldberger, of Newark, N. J., on the brief), for defendants-appellees.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff, as trustee in bankruptcy of Realty Renovating Corporation, has appealed herein from the dismissal on the merits of his complaint to recover property claimed to belong to the bankrupt estate and for other relief. Plaintiff relies upon Bankruptcy Act, §§ 60, 67, 70, 11 U.S.C.A. §§ 96, 107, 110, and upon state law to support his contention that the property in question, pledged by the bankrupt originally to Harnat Holding Corporation, and later without further change of possession to defendant Mauser Plumbing Supply Co., Inc., belonged to the estate, while this defendant claims the property by virtue of a transfer from Harnat to it after the pledgor's bankruptcy and an alleged sale by it foreclosing the pledges.[1] The case involves interesting and important legal questions as to the possession required for a valid pledge in New York when the property is already in the possession of a prior pledgee and as to the sale of pledged property after the pledgor's bankruptcy.

January 18, 1938, the bankrupt agreed to renovate premises known as 667 Madison Avenue, New York City; and payment of the contract price was thereafter made by the promissory notes of the owner, 667 Madison Avenue, Inc., maturing in 1939, 1940, and 1941, secured by an assignment of rents running to the bankrupt. June 22, 1938, the bankrupt owed $25,000 to Harnat Holding Corporation for loans and a bonus or discount therefor, and pursuant to a written agreement pledged with Harnat, as collateral security for this debt, the contract with 667 Madison Avenue, Inc., and all the notes and security received from it, as well as certain other promissory notes likewise secured by other assignments of rents. On October 6, 1938, the bankrupt made an agreement of pledge to defendant covering such of the Madison notes as would mature from September 1, 1939, to December 1, 1940, together with the assignments of rents of the premises,[2] all to secure a total obligation of $25,750, which in-

---

[1] There were two other defendants, one Lanoil, creditor of Realty, who assigned his claim to Mauser Plumbing Supply Co., which then became a part of the debt covered by the second pledge here involved, and Lew Mauser, president of the Plumb-ing Supply Co. Since the present record discloses no real claim against these defendants, we refer hereinafter to the Plumbing Supply Co. as the "defendant."

[2] This agreement also covered other collateral—different from collateral pledged

cluded both direct loans from and bonus to defendant and also the sum $18,257.30 originally owed one Lanoil and by him assigned to defendant. This security was still in the possession of Harnat and was therefore pledged as expressly subject to the Harnat debt of $25,000. At the same time the bankrupt instructed Harnat by letter to turn over to defendant all of the 1939 and 1940 Madison notes upon repayment of the $25,000 and to return to the bankrupt the 1941 notes. And Harnat through its counsel acknowledged and accepted the bankrupt's instructions by a letter of the same date to defendant. The parties stipulated at trial that the pledgor was solvent at that time.

By March, 1939, however, the pledgor was in financial difficulties; and, an attempted agreement with creditors falling through, involuntary proceedings in bankruptcy were started against it on May 1, 1939, at which time, as the parties now agree, it was insolvent. It was adjudicated a bankrupt on June 15, and plaintiff was elected trustee July 11, 1939. Defendant knew of the petition at once; and since the Harnat note made that a default, defendant, being notified by Harnat of the latter's intention to foreclose, bought Harnat out on May 3, 1939, for the amount still due on that pledge, namely, $7,861.43, and took possession of the collateral. On June 5, 1939, defendant gave written notice to the bankrupt that pursuant to the power of sale "in said principal note and agreement" (obviously a reference to the Harnat pledge, although it had just recited defaults in both pledges), it would sell the securities "at public auction to the highest bidder for cash" at the office of its attorney on June 10. At that sale defendant purchased all the securities in its hands for the amount then owed it by the pledgor, $32,761.43. The face value of the collateral at the time of the pledges appears to have been well in excess of $60,000;[3] and at the time of the trial in February,

1943, defendant conceded that it' had collected more than enough to satisfy the Harnat claim. Counsel then asserted that the collections already made were less than half defendant's own claim, but the court deferred any question of an exact accounting until the primary question of liability should be settled.

■ Plaintiff framed his complaint in five separate "causes of action," followed by a demand for judgment in fourteen different paragraphs. He withdrew the fifth cause at trial; and on this appeal the parties have stipulated that no question of law or fact will be raised as to the dismissal of the third and fourth causes. As a matter of fact, all these separate causes were only the statement of the same claim in the light of different legal theories. Such repetitious statement of legal claims, originally required by the exigencies of common-law pleading, is too firmly grounded in our history to be outlawed even though it has often been criticized by code pleaders.[4] But it has its dangers, as this case shows. A simple statement in sequence of the events which have transpired, coupled with a direct claim by way of demand for judgment of what the plaintiff expects and hopes to recover, is a measure of clarity and safety; and even the demand for judgment loses its restrictive nature when the parties are at issue, for particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not. Federal Rules of Civil Procedure, rule 54 (c), 28 U.S.C.A. following section 723c; Ring v. Spina, 2 Cir., 148 F.2d 647; United States, for Use of Susi Contracting Co. v. Zara Contracting Co., 2 Cir., 146 F.2d 606, and cases cited. On the other hand, the extensive pleading of seemingly precise legal theories inevitably tends to suggest that other theories, less well developed, are intentionally excluded.

■ Here, in fact, the particular legal

under the Harnat agreement. The record is silent as to the disposition of both the Harnat and the Mauser additional collateral; we advert to it here lest otherwise silence be deemed to foreclose consideration of its disposition by the District Court on remand hereof.

3 The pledgor in its assignment to Harnat covenanted that there was owing to it on the Madison contract $80,331.86, while in its assignment to Mauser it covenanted that there would be due it on January 1, 1939, the sum of $67,974.06.

After taking possession, defendant in September, 1939, agreed with Madison that the balance due on this contract was $65,-673.63. And there was other collateral, note 2, supra. Plaintiff in his brief gives as the face value of the collateral in issue on this appeal the sum of $61,044.62.

4 Stephen, Pleading, Williston's Ed.1895, 458–465; Shipman, Common-Law Pleading, 3d Ed. Ballantine, 1923, 203–206; authorities cited, Clark, Code Pleading, 80, 314–316.

theories contemplated by each cause are none too clear. Seemingly, however, the first cause is designed to stress a claim of preference and fraudulent transfer under Bankruptcy Act, §§ 60, 67, and state law, because possession of the property was actually taken by defendant after bankruptcy, while the second cause appears to stress invalidity of the sale, particularly because of lack of notice or of permission of the bankruptcy court, under § 70 and state law. On this appeal plaintiff has also strongly urged that at least he is entitled to the Madison notes maturing in 1941 and 1942, as not included in the Mauser pledge; while defendant contests this, as a change in theory not presented to or passed upon by the trial court. But in any event the complaint did set forth both pledge agreements as attached exhibits; and this particular point rests upon a mere reading and comparison of the two documents, which show on their face the more limited content of the second pledge. And plaintiff has attacked the initial validity of the Mauser pledge, as well as the effectiveness of the later sale upon which defendant now relies for title. Hence, however much plaintiff may have overpleaded, we think it clear that he is now entitled to attack the legal validity of the two transactions and to claim the property in full or to the extent or interest to which he may be legally entitled.[5]

 Plaintiff's first contention is, therefore, that the October 6, 1938, agreement created merely an equitable pledge, or one incomplete for lack of delivery of possession, which was not perfected until after bankruptcy. Hence plaintiff says that this was a preferential transfer under Bankruptcy Act, § 60, as not so far perfected

that no bona fide purchaser or creditor could have acquired further rights from the debtor until defendant's acquisition of possession on May 3, 1939. If plaintiff's premise is correct, its conclusion of a voidable preference is sound enough. Corn Exchange Nat. Bank & Trust Co., Philadelphia, v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, 144 A.L.R. 1189; Swetnam v. Edmund Wright Ginsberg Corp., 2 Cir., 128 F.2d 1, certiorari denied Edmund Wright Ginsberg Corp. v. Swetnam, 317 U.S. 647, 63 S.Ct. 42, 87 L.Ed. 521; In re Hutcherson, 7 Cir., 133 F.2d 959. But we agree with the District Court that the pledge was perfected at the time it was made, and hence long before defendant's physical acquisition of the security.

When the debtor made its pledge to defendant on October 6, 1938, the security in question was then out of the pledgor's possession and in the hands of Harnat, who, upon notice of the second pledge, agreed to deliver it to defendant as soon as its own debt was paid. This follows the usual rule that delivery should be all that the situation permits of at the time to remove the property from the ostensible ownership of the pledgor; to require more would in effect prevent a further pledge of property already subject to pledge and would set an arbitrary restriction on a normal commercial practice without due regard for the underlying policy of the legal rules. Delivery to the pledgee is required primarily as notice to the pledgor's creditors and possible purchasers that the property in question is no longer free from prior interests of third parties. Swetnam v. Edmund Wright Ginsberg Corp., supra; 51 Yale L.J. 431, 432; 4 Collier on Bankruptcy, 14th Ed.1942, 1446.[6] But when the

---

5 Whether all these contentions, particularly those going to the validity of the sale under state law, are within federal jurisdiction where diversity of citizenship does not appear, cf. State Trust & Sav. Bank v. Dunn, 278 U.S. 582, 49 S.Ct. 184, 73 L.Ed. 518, reversing, per curiam, 5 Cir., 24 F.2d 477, need not be decided here, for defendant in its answer admitted plaintiff's claim of jurisdiction and has contested the case only on the merits, thus giving the consent specified in Bankruptcy Act, § 23, sub. b, 11 U.S.C.A. § 46, sub. b. Schumacher v. Beeler, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433; Tilton v. Model Taxi Corp., 2 Cir., 112 F.2d 86; 2 Collier on Bankruptcy, 14th Ed.1940, 556.

6 The importance of notice is underlined by statutes such as N.Y.Lien Law, Consol.

Laws, c. 33, § 230, which we have held to require filing of liens on securities not perfected by delivery, Sammet v. Mayer, 2 Cir., 108 F.2d 337, or N.Y.Personal Property Law, Consol.Laws, c. 41, § 51, sub. 9 (Uniform Trust Receipts Act, § 1), defining "possession." Commentators have also suggested the further function of delivery in making a debtor relinquish dominion in order "to place some inconvenience or deterrent in the path of the debtor who is intent on arranging a preference device." Note, 37 Col.L.Rev. 621; cf. Collier, op. cit. But here not even payment to Harnat would result in reacquisition of dominion by the pledgor, for possession of the property was being withheld for payment of both debts.

property is no longer in the pledgor's possession, ordinarily no good reason exists for requiring further delivery. And the courts have recognized this in holding or indicating with regard to numerous transactions that delivery to or possession by a third party is sufficient to perfect the lender's pledge interest. Gibson v. Stevens, 49 U.S. 384, 8 How. 384, 12 L.Ed. 1123; McCoy v. American Exp. Co., 253 N.Y. 477, 171 N.E. 749; Irving Trust Co. v. Commercial Factors Corp., 2 Cir., 68 F.2d 864; Manufacturers' & Traders' Nat. Bank of Buffalo v. Gilman, 1 Cir., 7 F.2d 94; Shurtleff v. Norcross, 95 Vt. 420, 115 A. 494; Jones, Collateral Securities and Pledges, 3d Ed.1912, § 10.

■ Hence it has been expressly decided that the owner of personal property subject to a prior pledge, perfected by delivery of possession, may make a valid pledge of his remaining interest to a second pledgee, by simple execution of a contract to that effect. First Nat. Bank of Waterloo v. Bacon, 113 App.Div. 612, 98 N.Y.S. 717, affirmed without opinion First Nat. Bank of Waterloo v. Zartruan, 189 N.Y. 533, 82 N.E. 1126, affirmed 216 U.S. 134, 30 S.Ct. 368, 54 L.Ed. 418; Pierce v. National Bank of Commerce in St. Louis, 8 Cir., 268 F. 487. The only additional requirement suggested is that the first pledgee be given notice of such contract. McCoy v. American Exp. Co., supra; First Nat. Bank of Waterloo v. Bacon, supra; Irving Trust Co. v. Commercial Factors Corp., supra; Restatement, Security, 1941, § 8; 2 Glenn, Fraudulent Conveyances and Preferences, Rev.Ed.1940, § 478. But that, of course, has been complied with here.

Plaintiff relies, however, upon N. Y. Personal Property Law, § 53—a part of the

Uniform Trust Receipts Act enacted in 1934—which limits validity of an attempted pledge or agreement to pledge, not accompanied by delivery of possession, to ten days as against the pledgor's creditors, even where new value has been given by the pledgee, and which allows a bona fide purchaser to take free of the claimed pledge "unless, prior to the purchase, it has been perfected by possession taken." Admittedly a strict rule of delivery of possession was intended; and it had its uses, particularly before the 1938 amendment to Bankruptcy Act, § 60, in the light of those cases (collected in 3 Collier on Bankruptcy, 14th Ed. 1941, § 60.37, n. 51) which preserved the pledgee's equitable lien as against the bankruptcy trustee, where delivery took place within the four months' period, through the fiction of relating delivery back to the time of the agreement. See 45 Yale L.J. 1272, 1282; 5 Fordham L.Rev. 240, 268, 269; Bogert, The Effect of the Uniform Trust Receipts Act, 3 U. of Chi.L.Rev. 26, 37, 38.[7] But nowhere is there a suggestion of an intent to go so far as to outlaw a case where all the functions of delivery had already been duly fulfilled by the delivery to the prior pledgee. As the National Conference of Commissioners on Uniform State Laws puts it in its prefatory notes, the Act merely does away "with such 'constructive' possession by a secured creditor as is not kept obvious to a third party." 9 U.L.A., 1942, 665, 670. Here possession by a secured creditor was kept obvious for the benefit of both secured claims. Hence the pledge to defendant was perfected long prior to the four months' period and cannot now be avoided as a preference under Bankruptcy Act, § 60. This also disposes of the claim of fraudulent transfer under § 67.[8]

---

[7] Before the Chandler Act an equitable pledge providing for future delivery was considered perfected as of the time of the agreement as against creditors (though not as against bona fide purchasers); thus when that Act incorporated the "bona fide purchaser test" into § 60, it became possible for the trustee to avoid preferences or secret liens perfected within the four months' period. See McLaughlin, Amendment to the Bankruptcy Act, 40 Harv.L.Rev. 341, 387–390; McLaughlin, Aspects of the Chandler Bill to Amend the Bankruptcy Act, 4 U. of Chi.L.Rev. 369, 392–395; 3 Collier on Bankruptcy, 14th Ed. 1941, § 60.38.

[8] Both pledge agreements were accompanied by instruments of outright assignment of the securities, duly recorded in the office of the Register of New York County. The District Court held that such recording was not provided for by statute and the point has not been pressed on appeal. In Sammet v. Mayer, supra, note 6, we held that N.Y.Lien Law, § 230, as amended, applied to stocks and bonds; while in Rockmore v. Lehman, 2 Cir., 129 F.2d 892, certiorari denied 317 U.S. 700, 63 S. Ct. 525, 87 L.Ed. 559, we held that it did not apply to mere choses in action such as assignment of contract rights. Since the primary securities here were contract rights, and since, moreover, the real pledge agreements were not recorded, we need not decide in which category promissory notes may fall.

We come then to a consideration of the validity of the attempted sale by defendant of the pledged securities to itself on June 10, 1939, at a price of around half their face value. We realize, as Judge L. Hand has pointed out in In re Hudson River Nav. Corp., 2 Cir., 57 F.2d 175, that interference with the pledgee's power of sale is generally unwise. For in many situations, especially those involving pledged shares with stock exchange brokers, where collateral fluctuates from hour to hour, delay may render the pledgee's security worthless. Rapkin, Power of Courts to Restrain Sale of Pledged Collateral, 21 Marq. L.Rev. 195, 197. Nevertheless, however broad the power of sale, the pledgee cannot "sacrifice the property wantonly" or purchase "at a valuation so inadequate as to suggest a fraudulent purpose." Hiscock v. Varick Bank of New York, 206 U.S. 28, 38, 39, 27 S.Ct. 681, 684, 51 L.Ed. 945; Buder v. New York Trust Co., 2 Cir., 82 F.2d 168, 170, 104 A.L.R. 1035.[9] After all, he is a form of fiduciary and his conduct must stand the scrutiny of a court of equity. Toplitz v. Bauer, 161 N.Y. 325, 332, 55 N.E. 1059; Gillet v. Bank of America, 160 N.Y. 549, 560, 55 N.E. 292.[10]

The circumstances of the present sale show an utter disregard of the interests of others, particularly the pledgor's creditors, whose interest was then well known to defendant. The sale was essentially a secret one as to those presently interested, held in the office of defendant's own counsel, with no attempt to get in outside bidders or to obtain a fair price for the securities.[11] It amounted to no more than an assumption of dominion for the amount of the debt, i.e., a strict foreclosure by self-help.[12] Moreover, while the sale purported to be under the Harnat power of sale, it actually was for default in the later Mauser pledge also, and, as we have seen, covered without differentiation property not subject to that pledge.[13] And since that pledge contained no special provisions of waiver, the pledgee could not sell to himself under it. Story on Bailments, 8th Ed., § 310; Jones, Collateral Securities and Pledges, 3d Ed.1912, § 635; Restatement, Security, 1941, § 51; Note, 76 A.L.R. 705; Comment, 38 Col.L.Rev. 923. Even under the broader Harnat pledge, where the collateral note authorized disposition of the security "at public or private sale," it is doubtful under the cases whether such a secret sale of so much collateral to collect only the $7,861.43 due should be supported;[14] with the added attempt to collect its own debt by means and out of property

[9] See, also, Sparhawk v. Drexel, C.C.E.D.Pa., Fed.Cas.No.13,204; In re Thompson, D.C.W.D.Pa., 276 F. 313, affirmed 3 Cir., 284 F. 65, certiorari denied 260 U.S. 748, 43 S.Ct. 248, 67 L.Ed. 491; Coleman v. Solomon, 225 Ala. 407, 143 So. 576; Perkins v. Applegate, Ky., 85 S.W. 723; Hagan v. Continental Nat. Bank, 182 Mo. 319, 81 S.W. 171; Anchor v. Gose, Tex.Civ.App., 8 S.W.2d 690; Foote v. Utah Commercial & Savings Bank, 17 Utah 283, 54 P. 104.

[10] See, also, First Trust & Deposit Co. v. Potter, 155 Misc. 106, 110, 278 N.Y.S. 847; Cole v. Manufacturers Trust Co., 164 Misc. 741, 299 N.Y.S. 418; Jones, Collateral Securities and Pledges, 3d Ed. 1912, § 391; Colebrook on Collateral Securities, 2d Ed., § 87; Brown, Personal Property, 1936, 597; 1 Bogert on Trusts and Trustees, 1935, § 30; 1 Scott on Trusts, 1939, § 9.

[11] Of course, mere inadequacy of purchase price alone may not render a sale ineffective. Palmour v. Roper, 119 Ga. 10, 45 S.E. 790; Winchester Rock & Brick Co. v. Murdough, 233 Mass. 50, 123 N.E. 344; King v. Boerne State Bank, Tex.Civ.App., 159 S.W. 433.

[12] A pledge stipulation providing for forthright forfeiture of the collateral in the event of default has been universally condemned, particularly where the collateral exceeds the amount of the debt. First Trust & Deposit Co. v. Potter, 155 Misc. 106, 278 N.Y.S. 847; Evans v. Odum, 52 Ga.App. 453, 183 S.E. 669; Alcolea v. Smith, 150 La. 482, 90 So. 769, 24 A.L.R. 815; Restatement, Security, 1941, §§ 14, 55.

[13] The pledgee is under a duty to sell no more of a security, divisible without injury, than may reasonably appear to be enough to satisfy the debt. See Seasongood, Drastic Pledge Agreements, 29 Harv. L.Rev. 277, 286; Jones, Collateral Securities and Pledges, 3d Ed.1912, § 633.

[14] Even with the special provisions, waiving notice and permitting sale to himself, the pledgee is still "'trustee to sell,' not to buy, though with the privilege of buying, if fairly sold." Dibert v. Wernicke, 6 Cir., 214 F. 673, 681. Pledge agreements, prepared by the pledgee to protect its own interests, are to be construed "favorably to the interests of the pledgor so far as is consistent with the rights of the pledgee." Colebrook on Collateral Securities, 2d Ed., § 118; Manning v. Heidelbach, 153 App.Div. 790, 138 N.Y.S. 750; Coleman v. Solomon, 225 Ala. 407, 143 So. 576; Dulin v. National City

not covered by its pledge, the sale is not one to be sanctioned by an equity court, and must be held invalid. Cole v. Manufacturers Trust Co., 164 Misc. 741, 299 N. Y.S. 418; Buder v. New York Trust Co., 2 Cir., 82 F.2d 168, 104 A.L.R. 1035; State Trust & Savings Bank v. Dunn, 5 Cir., 24 F.2d 477, reversed on other grounds 278 U. S. 582, 49 S.Ct. 184, 73 L.Ed. 518, note 5, supra; Clapp v. Associated Depositors, Toledo, D.C.N.D. Ohio, 33 F.Supp. 686, 689, 690; Ohio Nat. Bank of Washington v. Central Const. Co., 17 App.D.C. 524; Union & Mercantile Trust Co. v. Harnwell, 158 Ark. 295, 250 S.W. 321; Lowe v. Ozmun, 3 Cal.App. 387, 86 P. 729; Note, 38 Col.L.Rev. 923; Seasongood, Drastic Pledge Agreements, 29 Harv.L.Rev. 277; Jones, Collateral Securities and Pledges, 3d Ed.1912, § 635a.

■■■ The sale being invalid, what then is the status of the pledges? At least one New York case has held the invalid sale by a pledgee to himself to amount to a conversion. Cole v. Manufacturers Trust Co., supra. A later case, however, disapproved of this holding, Kaufman v. Provident Sav. Bank & Trust Co. of Cincinnati, Sup., 23 N.Y.S.2d 637, 646, 647, affirmed 263 App.Div. 703, 31 N.Y.S.2d 664; and we agree with the prevailing view that where the pledgee has not as yet parted with the collateral the sale is merely voidable, so that upon repudiation the relations of the parties remain unchanged. Roach v. Duckworth, 95 N.Y. 391, 402; Duncomb v. New York, H. & N. R. Co., 84 N.Y. 190, 205; Bryan v. Baldwin, 52 N.Y. 232; Johnson v. Winslow, 155 Misc. 170, 279 N.Y.S. 147, 152, affirmed 246 App.Div. 800, 285 N. Y.S. 1075, affirmed 272 N.Y. 467, 3 N.E.2d 872; First Nat. Bank of Kansas City, Mo., v. Hall, 22 App.Div. 356, 47 N.Y.S. 1054, and cases collected in Seder v. Gould, 274 Mass. 223, 174 N.E. 311, 76 A.L.R. 705; Note, 38 Col.L.Rev. 925, n. 11; 24 Marq. L.Rev. 106. The present action brought by the trustee, now in the pledgor's shoes, amounts to such repudiation; and he may therefore redeem the collateral as if the sale had never taken place.

■■■ In an extensive defense the defendant pleaded laches and change of position as preventing any relief at this time, and at the trial it presented evidence in support of this defense. The District Court found it unnecessary to pass upon it, however. There does seem to have been delay upon the part of the trustee in instituting the action; but there is no evidence of any knowledge on his part, or, indeed, means of knowledge, of the sale until the bringing of the action. Moreover, whatever change of position defendant took appears to have been either to put itself in a more favorable position to collect (as by taking additional security in the form of a bond and mortgage from Madison to secure the amounts due) or to grant the usual delays in collection of real estate claims. As Charles Mauser, an officer of defendant, testified, the full principal sum was not forgiven in the slightest, or reduced by anything short of payment; and meanwhile the Madison property was paying all carrying charges and expenses, even attorneys' fees. Whatever might be the rule as to an original pledgor, Manning v. Heidelbach, 153 App.Div. 790, 138 N.Y.S. 750, there is no reason to hold the trustee without knowledge, and the estate he represents, barred from relief under such circumstances. See Johnson v. Winslow, supra; Kuhn v. Simons, 143 Misc. 21, 255 N.Y.S. 633; United Hotels Co. of America v. Mealey, 2 Cir., 147 F.2d 816.

■■■ The action must therefore be remanded for further proceedings below. As stated, the District Court did not take evidence on the amounts collected by the defendants on the collateral security, expecting to order an accounting later if it found liability. By this time sufficient collections may have been made so that all of defendant's claims will have been satisfied, leaving a balance due the plaintiff. But if not, and if defendant does not agree to a valuation of the security by the court under Bankruptcy Act, § 57, sub. h, defendant will now be entitled to sell the pledged property, observing the amenities as herein pointed out, and the trustee will be entitled

Bank, Ind.App., 130 N.E. 426, 428; Smith v. Shippers' Oil Co., 120 La. 640, 45 So. 533; Warfield v. Adams, 215 Mass. 506, 102 N.E. 706; Dibert v. D'Arcy, 248 Mo. 617, 647, 154 S.W. 1116, 1125; Seasongood, Drastic Pledge Agreements, 29 Harv.L.Rev. 277, 280. Here the right to sell without notice would seem properly limited only to cases either of sale to others, or at least of sale at a fair price. Compare cases collected in Note, 38 Col.L. Rev. 923, 926, n. 19. Moreover, had the pledgee claimed a deficiency, notice to the bankruptcy court of the sale might well have been a necessary prerequisite under Bankruptcy Act, § 57, sub. h, 11 U.S.C. A. § 93, sub. h. See 3 Collier on Bankruptcy, 14th Ed.1941, 268, 269, n. 42.

to redeem. In this connection, however, the court below should continue the case, in the event that the trustee fails to redeem, to see that the sale is properly made and any balance accounted for. Since it is stipulated that collections have already been sufficient to cover the Harnat debt, the sale must be for the Mauser obligation and only of the Mauser notes subject to the pledge. Moreover, the Harnat pledge itself contained directions as to the order of application of the security to its payment; those should be followed in applying the collections already made to the satisfaction of the Harnat pledge.

Although the codefendants referred to in note 1, above, seem to have no appropriate place in the action for aught that now appears of record, it is probably desirable that the entire judgment be reversed so that the court below, on the further proceedings now required, may make such order as to them as may then appear proper. No costs should be taxed against them in this court, however; the plaintiff is allowed his costs against the corporate defendant only.

Reversed and remanded for further proceedings in accord with this opinion.