# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

CHARLES W. KIM and
AVACO CO., LTD.,

              Plaintiffs,

          v.

FEMTOMETRIX, INC., a Delaware
corporation,

              Defendant.

C.A. No. 2025-0025-LWW

## MEMORANDUM OPINION

Date Submitted: July 16, 2025
Date Decided: August 8, 2025

Jody C. Barillare & Brian Loughnane, MORGAN, LEWIS & BOCKIUS LLP,
Wilmington, Delaware; Shawn F. Summers, MORGAN, LEWIS & BOCKIUS
LLP, Philadelphia, Pennsylvania; *Counsel for Plaintiffs Charles W. Kim and
Avaco Co., Ltd.*

Matthew E. Fischer, Tyler J. Leavengood, Christopher D. Renaud & Ryan M.
Ellingson, POTTER ANDERSON & CORROON LLP; *Counsel for Defendant
FemtoMetrix, Inc.*

**WILL, Vice Chancellor**

This case involves a dispute over the removal of Charles W. Kim from the board of FemtoMetrix, Inc. Kim was designated to the board by his employer, Avaco Co., Ltd.—a FemtoMetrix investor and partner.

After Avaco filed commercial litigation against FemtoMetrix, FemtoMetrix amended a voting agreement to disqualify "Conflicted Directors." A so-called Conflicted Director is one employed by any company suing FemtoMetrix. Citing this new restriction, FemtoMetrix's stockholders voted to remove Kim from the board.

Kim and Avaco sued FemtoMetrix under 8 *Del. C.* § 225, claiming that Kim remains a director. They assert that the voting agreement amendment is unenforceable because it lacked Avaco's required consent. FemtoMetrix counters that Kim was validly removed because the amendment complies with the voting agreement.

On cross-motions for summary judgment, I conclude that the plain terms of the voting agreement support FemtoMetrix's position. Kim and Avaco's additional theories are rejected as unpleaded or waived. FemtoMetrix's motion is granted; Kim and Avaco's motion is denied.

## I. FACTUAL BACKGROUND

Unless otherwise noted, the following background is drawn from undisputed facts in the pleadings and documentary exhibits submitted by the parties.[1]

### A. Avaco's Investment in FemtoMetrix

Defendant FemtoMetrix, Inc. is a privately-held Delaware corporation that develops and sells metrology instruments for the chip industry.[2] On November 3, 2020, FemtoMetrix entered into a Convertible Note and Series B Preferred Stock Purchase Agreement with plaintiff Avaco Co. Ltd., a publicly traded Korean company providing mass production manufacturing services.[3] In exchange for a capital investment, Avaco received FemtoMetrix Series B preferred stock, plus other consideration.[4]

---

[1] *See* Pl.'s Verified Compl. Pursuant to 8 Del. C. § 225 (Dkt. 1) ("Compl."); Def. FemtoMetrix, Inc.'s Answer to Verified Compl. Pursuant to 8 Del. C. § 225 (Dkt. 30) ("Answer"). Exhibits to the Transmittal Affidavit of Ryan M. Ellingson to FemtoMetrix, Inc.'s Brief in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of FemtoMetrix's Cross-Motion for Summary Judgment (Dkt. 45) are cited as "Def.'s Ex. __."

[2] Answer ¶ 8; *see About Us*, FemtoMetrix, https://www.FemtoMetrix.com/about (last visited July 15, 2025).

[3] *See AVACO Provides Cost-Effective Solutions with Custom Design Services to Contract Manufacturing Market*, Business Wire (Jan. 18, 2023), https://www.businesswire.com/news/home/20230117006178/en/AVACO-Provides-Cost-Effective-Solutions-with-Custom-Design-Services-to-Contract-Manufacturing-Market.

[4] Answer ¶¶ 1, 9.

**B.  The Voting Agreement**

Also on November 3, Avaco, FemtoMetrix, and FemtoMetrix's other stockholders entered into an Amended and Restated Voting Agreement of FemtoMetrix, Inc. (the "Voting Agreement").[5]

Section 1.2 of the Voting Agreement governs the election of directors to the FemtoMetrix Board of Directors.  Section 1.2(a) grants Avaco the right to appoint a "Series B Designee" to the Board.[6]  Avaco's choice of designee is limited by Section 1.6, which bars "bad actors" as defined in SEC Rule 506(d).[7]  Under Section 1.4(a) of the Voting Agreement, Avaco must consent to the removal of its Board designee, unless the removal is "for cause."[8]  The Voting Agreement does not define "cause."

Section 7.8 addresses amendments to the Voting Agreement.  Generally, the Voting Agreement may "be amended or terminated . . . by a written instrument executed by" FemtoMetrix, certain "Key Holders," and a majority of the common stockholders.[9]  There are five exceptions, two of which are pertinent here.  First, any

---

[5]  Def.'s Ex. 1 (FemtoMetrix, Inc. Am. and Restated Voting Agreement) ("Voting Agreement").

[6] *Id.* § 1.2(a).

[7] *Id.* § 1.6. Rule 506(d) is in Regulation D, which provides exemptions from the registration requirements of the Securities Act of 1933. *Exempt Offerings*, U.S. Sec. & Exch. Comm'n, https://www.sec.gov/resources-small-businesses/exempt-offerings (last updated Nov. 6, 2024).

[8] Voting Agreement § 1.4(a).

[9]  *Id.* § 7.8.

amendment "with respect to any Investor" cannot be made "without the written consent of such Investor . . . unless such amendment . . . applies to all Investors . . . in the same fashion."[10]  Second, any amendment to Section 1.2(a) cannot be made "without the written consent of Avaco."[11]

## C.    The Dispute

In 2021, Avaco appointed plaintiff Charles W. Kim as Avaco's Series B Designee to the Board.[12]  Kim is an Avaco employee.[13]

FemtoMetrix and Avaco had an amicable relationship for a time.  They collaborated on the development of a commercial metrology instrument.[14]  But their partnership went sideways, culminating in Avaco bringing commercial litigation against FemtoMetrix.[15]

In March 2024, Avaco sued FemtoMetrix in the Republic of Korea to enjoin the sale of a FemtoMetrix product.[16]  Two months later, it sued FemtoMetrix in the

---

[10] *Id.* § 7.8(a); *see supra* note 61 and accompanying text (quoting the provision); *see also supra* note 59 (defining "Investor").

[11] Voting Agreement § 7.8(e).

[12] Answer ¶ 17.

[13] *Id.* ¶ 32.

[14] *Id.* ¶ 18.

[15] *Id.* ¶¶ 21-23.

[16] *Id.* ¶ 21.

4

Superior Court of the State of California for breach of contract.[17] Kim also brought litigation against FemtoMetrix in this court under 8 *Del. C.* § 220, which was dismissed in November 2024.[18] The Korean action was dismissed by the court in December 2024.[19]

### D. The Amendment

On October 7, 2024, while the suits in Korea and California were pending, FemtoMetrix and certain of its stockholders purported to amend Sections 1.4 and 1.7 of the Voting Agreement (the "Amendment").[20] The stated reason for the Amendment was to prevent Avaco from obtaining sensitive information while the parties were embroiled in litigation.[21] Avaco did not consent to the Amendment.[22]

The Amendment made three key changes to the Voting Agreement:

- New Section 1.4(d) prohibits a "Conflicted Director" from serving on the Board. A Conflicted Director is defined as a person who is "a service provider or otherwise employed by or

---

[17] *Id.* ¶ 22; *see Avaco Co. Ltd. v. FemtoMetrix, Inc.*, Case No. 24CV39330 (Cal. Super. Ct. Santa Clara Cnty. May 17, 2024).

[18] Answer ¶ 3; *see Kim v. FemtoMetrix, Inc.*, C.A. No. 2024-0679-SEM (Del. Ch. June 24, 2024) (ORDER).

[19] Defs.' Ex. 14.

[20] *See* Compl. Ex. C (letter to Avaco from FemtoMetrix's CEO) 1 (stating that the Amendment was "duly adopted in accordance with Section 7.8 of the Voting Agreement"); Defs.' Ex. 9 (Am. to the Am. and Restated Voting Agreement) ("Amendment").

[21] *See* Amendment 1 ("[T]he parties to the Voting Agreement believe that directors of the Company who are employed by a Person that is engaged in commercial litigation against the Company present too high a risk of such conflicting interests, including interests that are directly adverse to the Company and its stockholders . . . .").

[22] Answer ¶ 33.

an Affiliate of any Person that is engaged in commercial litigation against [FemtoMetrix]."[23]

- Amended Section 1.4(a), which prevents the removal of an investor's designee except for "cause," became "subject to Section 1.4(d)."[24]

- New Section 1.7, titled "Conflicted Director Matters," states that no investor with a designation right under Section 1.2 of the Voting Agreement may designate a Conflicted Director. It also requires the designating investor to "take all such actions as are necessary to remove the Conflicted Director immediately upon being provided notice by the Company . . . that a director has become a Conflicted Director."[25]

Around October 17, 2024, FemtoMetrix stockholders with over 53% of FemtoMetrix's common stock (on an as-converted basis) demanded that Kim be removed from the Board under Section 1.4(d) of the amended Voting Agreement.[26] They noted that Kim had become a Conflicted Director due to Avaco's litigation against FemtoMetrix.[27] Simultaneously, stockholders with over 51% of FemtoMetrix's Series B preferred stock and 70% of its common stock (on an as-converted basis) executed a written consent instructing FemtoMetrix to remove Kim from the Board pursuant to the Amendment.[28]

---

[23] Amendment § 1 (adding new Section 1.4(d)).

[24] *Id.* § 1; *see* Voting Agreement § 1.4(a).

[25] Amendment § 2 (adding new Section 1.7).

[26] Defs.' Ex. 10; *see* Compl. Ex. C at Ex. C.

[27] Defs.' Ex. 10.

[28] Defs.' Ex. 12; *see* Compl. Ex. C.

6

On October 25, FemtoMetrix's President executed a proxy on behalf of the remaining parties to the Voting Agreement.[29] In doing so, he adopted the resolutions in the stockholder written consent and confirmed Kim's removal.[30] Three days later, FemtoMetrix told Avaco that Kim had been removed from the Board.[31]

## E. This Litigation

On January 8, 2025, Kim and Avaco filed a lawsuit in this court against FemtoMetrix.[32] They advanced two counts under 8 *Del. C.* § 225: (1) that the Amendment is invalid and unenforceable; and (2) that Kim was not validly removed as a FemtoMetrix director.[33] The parties agreed to an expedited schedule, and I entered a limited form of status quo order pending the resolution of the suit.[34]

The parties' stipulated schedule contemplated cross-motions for summary judgment. Briefs in support of and in opposition to those motions were filed between

---

[29] Defs.' Ex. 13; *see* Voting Agreement § 4.2.

[30] Defs.' Ex. 13; *see* Compl. Ex. C.

[31] Compl. Ex. C; Answer ¶ 4.

[32] Dkt. 1.

[33] *Id.*

[34] Dkts. 16-17, 34, 40.

March 24 and June 13.[35]  After a hearing on July 16, I took the motions under advisement.[36]

## II.   ANALYSIS

Under Court of Chancery Rule 56, summary judgment may be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[37]  "In evaluating cross-motions for summary judgment, the court must examine each motion separately and only grant a motion for summary judgment to one of the parties when there is no disputed issue of material fact and that party is entitled to judgment as a matter of law."[38]  Delaware courts view "pure matters of contractual interpretation as readily amenable to summary judgment"[39] because the "proper interpretation of language in a contract . . . is treated as a question of law . . . ."[40]

---

[35] Opening Br. in Supp. of Pls.' Mot. for Summary J. (Dkt. 44) ("Pls.' Opening Br."); FemtoMetrix, Inc.'s Opening Br. in Opp'n to Pls.' Mot. for Summ. J. and in Supp. of FemtoMetrix's Cross-Mot. for Summ. J. (Dkt. 45) ("Def.'s Opening and Opp'n Br."); Pls.' Br. in Opp'n to FemtoMetrix Inc.'s Cross-Mot. for Summ. J. and Reply in Supp. of Pls.' Mot. for Summ. J. (Dkt. 48) ("Pls.' Opp'n and Reply Br."); FemtoMetrix, Inc.'s Reply Brief in Further Supp. of Cross-Mot. for Summ. J. (Dkt. 49) ("Def.'s Reply Br.").

[36] Dkt. 53.

[37] Ct. Ch. R. 56(c).

[38] *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 166-67 (Del. Ch. 2003) (citation omitted).

[39] *Tetragon Fin. Grp. Ltd. v. Ripple Labs Inc.*, 2021 WL 1053835, at *3 (Del. Ch. Mar. 19, 2021) (citation omitted).

[40] *Pellaton v. Bank of N.Y.*, 592 A.2d 473, 478 (Del. 1991) (citation omitted).

8

Here, there are no material facts in dispute. The claims hinge on the terms of the Voting Agreement, which is governed by Delaware law.[41] "Delaware law adheres to the objective theory of contracts," meaning that "a contract's construction should be that which would be understood by an objective, reasonable third party."[42] "When interpreting a contract, [the] Court 'will give priority to the parties' intentions as reflected in the four corners of the agreement.'"[43] The contract must be construed "as a whole" with each provision given effect, "so as not to render any part of the contract mere surplusage."[44]

The plaintiffs' claims, as described in the Complaint, hinge on alleged breaches of three Voting Agreement provisions: Sections 1.2, 1.4, and 7.8.[45] I begin by reviewing those sections and conclude that the Amendment complies with them. The plaintiffs' opening brief raised two additional theories, for breaches of Section 4.1 and the implied covenant of good faith and fair dealing in the Voting Agreement. Both theories are unpled and fail on that basis.

---

[41] *See* Answer ¶ 10 (admitting that the validity and contents of the Voting Agreement is not in dispute); Voting Agreement § 7.4; *see also* Pls.' Opening Br. 8.

[42] *Salamone v. Gorman*, 106 A.3d 354, 367-68 (Del. 2014) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)).

[43] *Id.* at 368 (quoting *GMG Cap. Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 779 (Del. 2012)).

[44] *Osborn*, 991 A.2d at 1159 (quoting *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010)).

[45] *See* Compl. ¶¶ 11-17 (citing and discussing the effect of these provisions).

## A. Compliance with Voting Agreement Sections 1.2, 1.4, and 7.8

The plaintiffs allege that "[p]ursuant to the Voting Agreement, [FemtoMetrix] could not adopt the Amendment without Avaco's consent."[46] According to the Complaint, the Amendment "effectively amended Avaco's [B]oard designation rights under Section 1.2 of the Voting Agreement, improperly target[ed] Avaco, and w[as] specifically designed to cause Kim's removal from the [B]oard."[47] This claim as pleaded implicates three provisions of the Voting Agreement: Sections 1.2, 1.4, and 7.8 of the Voting Agreement.

Under the original version of Section 1.4(a), "a director designated under Section 1.2, like Kim, [could not] be removed without the consent of the designating party—here, Avaco."[48] The Amendment "added a carve out to that prohibition and made it 'subject to' the newly added 'Section 1.4(d)'" about Conflicted Directors.[49] Section 1.4(d) provides:

> [N]o person who is currently a service provider or otherwise employed by or an Affiliate of any Person that is engaged in commercial litigation against [FemtoMetrix] (a "Conflicted Director") may serve as a director of [FemtoMetrix] throughout the pendency of any such litigation proceeding. Upon forty-eight (48) hours' notice delivered in accordance with Section 7.7, of this Agreement, upon the request of any one or more Stockholders of [FemtoMetrix] to remove such director, which

---

[46] *Id.* ¶ 43.

[47] *Id.* ¶ 27 (citing Compl. Ex. C).

[48] *Id.* ¶ 28 (citing Voting Agreement § 1.4(a)).

[49] *Id.* ¶ 28 (citing Amendment § 1.4(a), (d)).

notice shall include evidence of the pendency of such commercial litigation, such director shall be removed. All Stockholders agree to execute any written consents required to perform the obligations of this Agreement, and [FemtoMetrix] agrees at the request of any party entitled to designate directors to call a special meeting of stockholders for the purpose of electing directors.[50]

"The Amendment also imposed a new qualification on the class of persons that Avaco may appoint as its director designee under Section 1.2, which was unrestricted under the Voting Agreement, by adopting a new Section 1.7."[51]

The plaintiffs assert that these changes "amended" the "observance of [a] term of th[e] [Voting] Agreement" and "did not apply to all investors 'in the same fashion."[52] Thus, they insist that their consent was required by Voting Agreement Section 7.8(a).[53] The plain terms of the Voting Agreement lend no support to these arguments.

### 1. Sections 1.2 and 1.4

The plaintiffs claim that the Amendment breached Sections 1.2 and 1.4 of the Voting Agreement by altering Avaco's "practically unfettered" right to designate a Board member.[54] But the plaintiffs cannot identify where the Amendment

---

[50] Amendment § 1.4(d).

[51] Compl. ¶ 29 (citing Amendment § 1.7).

[52] Id. ¶¶ 31-32 (quoting Voting Agreement § 7.8(a)).

[53] Id.

[54] Pls.' Opening Br. 13.

contravened those provisions. Neither Section 1.2 nor Section 1.4 of the Voting Agreement protects Avaco from amendments that affect its designation right.

Section 1.2(a) affords Avaco the right to designate a "Series B Designee" to the Board:

> From and after the closing of the sale of Series B Preferred Stock to Avaco, one person (the "Series B Designee") designated by Avaco Co, Ltd. ("Avaco"), which individual shall be designated in writing at that time, for so long as Avaco and its Affiliates continue to own beneficially at least fifty percent (50%) of the shares of Common Stock of [FemtoMetrix] issued to Avaco pursuant to the [SPA] (on an as-converted basis, including shares of Common Stock issued or issuable upon conversion of Series B Preferred Stock, including shares of Series B Preferred Stock issued in connection with the Series B Warrants, as such term is defined in the Purchase Agreement), which number is subject to appropriate adjustment for all stock splits, dividends, combinations, recapitalizations and the like.[55]

This designation right is not absolute or insulated from changes in eligibility criteria imposed elsewhere in the Voting Agreement. Pre-Amendment, it was limited by the criteria for designees in Section 1.6.[56] Post-Amendment, Avaco retains the right to appoint a Board member, so long as the person is not a "bad actor" or a Conflicted Director.

Section 1.4(a) limits without-cause removals of directors designated under Section 1.2:

---

[55] Voting Agreement § 1.2(a).

[56] *See id.* § 1.6.

[N]o director elected pursuant to Subsections 1.2 or 1.3 of this Agreement may be removed from office other than for cause unless (i) such removal is directed or approved by the affirmative vote of the Person or of the holders of at least the specified number of the shares of stock entitled under Subsection 1.2, as applicable, to designate that director; or (ii) the Person(s) originally entitled to designate or approve such director or occupy such Board seat pursuant to Subsection 1.2 is no longer so entitled to designate or approve such director or occupy such Board seat . . . .[57]

This provision requires Avaco's consent to remove its director designees without cause. But Avaco's consent is not required for a for-cause removal. The Amendment identifies a circumstance in which a designee effectively becomes removable for cause: being a Conflicted Director.[58]

## 2. Section 7.8

The main provision at issue is Section 7.8, which addresses amendments to the Voting Agreement. Section 7.8 generally permits amendments adopted "by a written instrument executed by (a) the Company; (b) the Key Holders . . .; and (c) the holders of a majority of the shares of Common Stock issued or issuable upon conversion of the shares of Preferred Stock held by the Investors . . . ."[59] The

---

[57] *Id.* § 1.4(a).

[58] Amendment § 1.4(d).

[59] Voting Agreement § 7.8. "Investors" is defined as "each Holder of the Company's Preferred Stock . . . listed on Schedule A" to the Voting Agreement and "any subsequent purchasers, investors, or transferees" thereof. *Id.* at 1 (preamble). Avaco became an "Investor" when FemtoMetrix's Series B round closed in 2021. Answer ¶ 1.

plaintiffs do not dispute that these necessary parties approved the Amendment in writing.[60]

Instead, the plaintiffs point to Voting Agreement Section 7.8(a) and 7.8(e), which are exceptions to the typical amendment procedure:

> (a) [the Voting] Agreement may not be amended or terminated and the observance of any term of th[e Voting] Agreement may not be waived with respect to any Investor . . . without the written consent of such Investor . . . unless such amendment, termination or waiver applies to all Investors or Key Holders, as the case may be, in the same fashion . . .
>
> (e) Subsection 1.2(a) of this Agreement shall not be amended or waived without the written consent of Avaco . . . .[61]

Based on these provisions, the plaintiffs assert that the Amendment required Avaco's written consent.[62] FemtoMetrix, for its part, maintains that neither exception is implicated.[63]

The plain terms of the Voting Agreement belie the plaintiffs' position and support FemtoMetrix's reading as a matter of law.

### a.      Section 7.8(a)

Section 7.8(a) states that any amendment to the Voting Agreement "with respect to any Investor" requires that Investor's written consent, unless the

---

[60]  *See* Pls.' Opening Br. 12-13.

[61] Voting Agreement § 7.8(a), (e).

[62] *See* Pl.'s Opening Br. 13-14.

[63] *See* Def.'s Opening and Opp'n Br. 13-18.

amendment "applies to all Investors . . . in the same fashion."[64]  New Section 1.4(d) prevents *any* "person who is currently a service provider or otherwise employed by or an Affiliate of any Person that is engaged in commercial litigation against [FemtoMetrix] (a 'Conflicted Director') [from] serv[ing] as a director of [FemtoMetrix] throughout the pendency of any such litigation proceeding."[65]

As the plaintiffs acknowledge, this term is facially neutral.[66]  It applies "in the same fashion" to all Investors.  When Avaco's California litigation against FemtoMetrix ends, Avaco will be free to redesignate Kim to the Board.  And if another Investor with a Board designee sues FemtoMetrix, the designee may be removed as a Conflicted Director.

Still, the plaintiffs maintain that Avaco's consent was required because Avaco is the sole Investor currently affected by the Amendment.[67]  Avaco was the only Investor engaged in commercial litigation with FemtoMetrix at the time the Amendment was adopted.[68]  But equal application, as contemplated by Section 7.8(a), is not the same as equal effect.   Nothing in Section 7.8(a) requires that an amendment always have an identical effect on each Investor.  Section 7.8(a) only

---

[64] Voting Agreement § 7.8(a).

[65] Amendment § 1.4(d).

[66] Pls.' Opening Br. 18.

[67] *Id.*

[68] *Id.*

15

requires an objective application to each Investor. To adopt the plaintiffs' view would require an expansion of Section 7.8(a)'s terms—an exercise that Delaware courts will not undertake.[69]

### b. Section 7.8(e)

Section 7.8(e) requires Avaco's consent for amendments to Section 1.2(a) of the Voting Agreement.[70] But the Amendment does not amend or waive Section 1.2(a). It amends provisions governing director qualifications and removal procedures other than those in Section 1.2.[71]

Despite that, the plaintiffs argue that Section 7.8(e) prohibits amendments that have any effect on Avaco's director designation rights.[72] That is not what Section

---

[69] *See Miller v. HCP & Co.*, 2018 WL 656378, at *9 (Del. Ch. Feb. 1, 2018) ("The Court will not rewrite a contract simply because a party now wishes it had gotten a better deal."), *aff'd sub nom. Miller v. HCP Trumpet Invs., LLC*, 194 A.3d 908 (Del. 2018); *Great West Invs. LP v. Thomas H. Lee P'rs*, 2011 WL 284992, at *8 (Del. Ch. Jan. 14, 2011) ("The Court's role is not to rewrite the contract between sophisticated market participants, allocating the risk of an agreement after the fact, to suit the court's sense of equity or fairness. Instead, it is to give meaning and substance to the words the parties have freely chosen.") (cleaned up and citation omitted); *see also Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) ("Parties have a right to enter into good and bad contracts, the law enforces both.").

[70] Voting Agreement § 7.8(e).

[71] *See* Amendment ¶ 1; *see id.* ¶ 4 ("Except as expressly amended hereby, the Voting Agreement shall remain in full force and effect in accordance with its terms."); *see also* Pls.' Opening Br. 17-18 (acknowledging this fact).

[72] *See* Pls.' Opening Br. 13. The plaintiffs' argument is more akin to one implicating the implied covenant of good faith and fair dealing, rather than of the breach of an express term. As discussed below, the plaintiffs have not pleaded any such implied covenant claim. *See infra* Section II.B.

7.8(e) says. Avaco could have bargained for a right to veto every amendment that affects its Board designees. It did not. It agreed that it has the right to veto amendments to Section 1.2(a) specifically.[73]

Section 1.6 of the Voting Agreement reinforces this point. Before the Amendment, Section 1.6 barred Avaco from designating "bad actors" to the Board.[74] The parties chose not to extend Avaco's Section 7.8(e) veto right to amendments to Section 1.6. Nor did they agree that Avaco's veto right includes amendments to Section 1.4, which addresses director removals.

*　　　*　　　*

The plaintiffs' brief in opposition to FemtoMetrix's motion and in further support of their own acknowledges that "whether the Amendment violates the terms of Sections 1.2, 1.4, . . . and 7.8" is central to resolving the cross-motions.[75] Yet they made the strategic choice not to address a single argument made by the

---

[73] *See Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006) ("When the language of a contract is clear and unequivocal, a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create new contract rights, liabilities and duties to which the parties had not assented.").

[74] Pls.' Opening Br. 3 ("The only limitation on Avaco's choice of director, as bargained for in the Voting Agreement, is the disqualification of so-called 'Bad Actor' designees." (citing Voting Agreement § 1.6)).

[75] Pls' Opp'n and Reply Br. 2. The quoted language also references Section 4.1 of the Voting Agreement. As discussed below, this theory is unpled. *See infra* Section II.B.

defendant about those provisions.[76] Their silence on the merits constitutes a waiver.[77]

Even if their arguments were not waived, their claims that the Amendment violated Sections 1.2, 1.4, or 7.8 of the Voting Agreement fail as a matter of law. Section 7.8 did not require Avaco's consent because the Amendment applies "in the same fashion" to every Investor and Section 1.2(a) was unchanged. Avaco's designation right in Section 1.2 is subject to director qualifications elsewhere in the Voting Agreement. And Section 1.4 does not require Avaco's consent to effectuate a for-cause removal of its designee. Thus, the Amendment is not invalid due to Avaco's non-consent.

---

[76] Pls.' Opp'n and Reply Br. 2 (stating "rather than recapitulate the arguments of the [plaintiffs'] Opening Brief in opposition to [FemtoMetrix]'s Cross-Motion," they would reply to arguments regarding Section 4.1 of the Voting Agreement and an implied covenant theory); *see also* Def.'s Reply Br. 4 (pointing out that the plaintiffs "offer no alternative reading of Section 7.8" that refutes FemtoMetrix's reading as set out in its opening and opposition brief).

[77] *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived." (citations omitted)); *MHS Cap. LLC v. Goggin,* 2018 WL 2149718, at *16 (Del. Ch. May 10, 2018) (holding that the plaintiff "abandoned every claim" it did not defend in its brief opposing the defendant's motion to dismiss); *Reith v. Lichtenstein*, 2019 WL 2714065, at *19 (Del. Ch. June 28, 2019) ("By failing to respond, Plaintiff abandoned this claim."); *Larkin v. Shah*, 2016 WL 4485447, at *2 n.5 (Del. Ch. Aug. 25, 2016) (explaining that a plaintiff's failure to raise an argument in opposition to a motion to dismiss constituted waiver); *see also In re Mobilactive Media, LLC*, 2013 WL 297950, at *12 n.152 (Del. Ch. Jan. 25, 2013) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation omitted)).

18

## B. Arguments About Section 4.1 and the Implied Covenant

The lead arguments in the plaintiffs' opening summary judgment brief are that the Amendment violated (1) an efforts clause in Section 4.1 of the Voting Agreement and (2) the implied covenant of good faith and fair dealing.[78] Their opposition and reply brief was devoted exclusively to these issues.[79] But neither Section 4.1 nor the implied covenant is even mentioned in the Complaint. "Arguments in briefs do not serve to amend the pleadings."[80] These arguments therefore fail.

The plaintiffs believe that their new theories can stand because this is a Section 225 action.[81] In their view, the claims in their Complaint concern any theory bearing on whether the Amendment and Kim's removal are valid—even those not alleged.[82] Still, Section 225 actions are not exempt from the pleading requirements of Court of Chancery Rule 8. The plaintiffs were required to inform FemtoMetrix of the grounds for its Section 225 claims.

---

[78] *See* Pls.' Opening Br. 10-12.

[79] *See infra* note 76.

[80] *Cal. Pub. Emps.' Ret. Sys. v. Coulter*, 2002 WL 31888343, at *12 (Del. Ch. Dec. 18, 2002).

[81] Pls.' Opp'n and Reply Br. 3 (arguing that the defendants' waiver argument "misstates Plaintiffs' actual claims and evidences a mistaken understanding of the posture of this case").

[82] *Id.* at 4 ("Plaintiffs . . . seek only a declaratory judgment that Kim's removal from the Company's board was improper because the Amendment is 'invalid and unenforceable.'" (quoting Compl. 15)).

The Complaint states that the plaintiffs' Section 225 claims rest on purported breaches of the Voting Agreement.[83] Rule 8 required the plaintiffs to "cit[e] to the provisions alleged to have been breached."[84] The Complaint specifically identifies Sections 1.2, 1.4, and 7.8, which are cited at length.[85] Both Section 4.1 and the implied covenant are unmentioned. In fact, the plaintiffs did not invoke Section 4.1 or the implied covenant until they filed their opening summary judgment brief—after discovery had concluded.[86]

If the plaintiffs intended to claim that the Amendment violated Section 4.1, they were required to at least mention the provision in their Complaint. Their failure to do so is not only a "technical foot fault," but also "a fundamental failure to give [FemtoMetrix] fair notice of the claim asserted against [it] . . . ."[87] As for the

---

[83] *See id.* at 6 (arguing that Rule 8 is satisfied because they alleged that the "basis for [their] Complaint is the invalidity of the Amendment to the Voting Agreement" (citing Compl. ¶¶ 26-34)).

[84] *Enzolytics, Inc. v. Empire Stock Transfer Inc.*, 2023 WL 2543952, at *3 (Del. Ch. Mar. 16, 2023); *see also US Ecology, Inc. v. Allstate Power Vac, Inc.*, 2018 WL 3025418, at *5 (Del. Ch. June 18, 2018), *aff'd*, 202 A.3d 510 (Del. 2019) (TABLE); *cf. Ryan v. Buckeye P'rs., L.P.*, 2022 WL 389827, at *6 (Del. Ch. Feb. 9, 2022) (holding that the plaintiff "could have described the contract provision(s) allegedly breached without actually identifying them by section or subject heading, and that likely would have sufficed for notice pleading purposes"), *aff'd*, 285 A.3d 459 (Del. 2022) (TABLE).

[85] *See* Compl. ¶¶ 11, 13, 15-16.

[86] Pls.' Opening Br. 9-12, 14-19. The plaintiffs did not mention Section 4.1 or the implied covenant in their status quo motion. *See* Pls.' Mot. for Entry of a Status Quo Order (Dkt. 3) ¶ 5.

[87] *Buckeye P'rs*, 2022 WL 389827, at *6; *see also Enzolytics*, 2023 WL 2543952, at *3 n.5 (collecting cases).

implied covenant, Rule 8 likewise required the plaintiffs to identify the obligation allegedly breached.[88]

The plaintiffs' "extensive pleading of seemingly precise legal theories," citing specific contract provisions, would have suggested to FemtoMetrix that others were intentionally excluded.[89] FemtoMetrix had no reason to explore unpled theories in discovery. To permit the plaintiffs to raise new avenues for relief at this stage would unfairly prejudice FemtoMetrix.[90]

As a fallback, the plaintiffs appeal to equity. They cite a recent Court of Chancery decision stating that "particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not."[91] That does not, however, mean that a plaintiff can raise a theory for the first time in a dispositive motion.[92] A plaintiff is the master of her

---

[88] *See, e.g.*, *Metro. Life Ins. Co. v. Tremont Gp. Hldgs.*, 2012 WL 6632681, at *15 (Del. Ch. Dec. 20, 2012) ("To state a claim for breach of the implied covenant, a litigant must allege: (1) a *specific* obligation implied in the contract; (2) a breach of that obligation; and (3) resulting damages." (citation omitted)).

[89] *Gins v. Mauser Plumbing Supply Co.*, 148 F.2d 974, 976 (2d Cir. 1945).

[90] *See* 5 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1219 (4th ed.) ("[W]hen a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining a defense upon the merits." (citation omitted)).

[91] *Trifecta Multimedia Hldgs., Inc. v. WCG Clinical Servs. LLC*, 318 A.3d 450, 469 (Del. Ch. 2024) (quoting *Gins*, 148 F.2d at 976).

[92] *Trifecta* relies on the United States Supreme Court's opinion in *Johnson v. City of Shelby, Mississippi* for "reversing dismissal of complaint for failure to articulate a claim under

21

complaint.[93]   It does not fall upon this court to save a plaintiff from her own deficiencies.[94]

## III.   CONCLUSION

Kim and Avaco's motion for summary judgment is denied; FemtoMetrix's cross-motion for summary judgment is granted.  Judgment on Counts I and II are entered in FemtoMetrix's favor as a matter of law.  The status quo order is lifted, and this case is dismissed with prejudice.

---

42 U.S.C. § 1983." *See id.* at 469 n.75 (citing 574 U.S. 10, 11 (2014)).  But in *Johnson*, the Supreme Court held a dismissal improper where the pleading deficiency was a technicality.  574 U.S. at 12. There, the plaintiffs failed to add a citation to 42 U.S.C. § 1983 when they brought an action to enforce their due process rights under the Fourteenth Amendment. *Id.*  The Court stated that the pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim they asserted." *Id.* at 11.  Here, by contrast, the plaintiffs did not merely make an "imperfect statement."  They failed to raise their legal theory at a basic level.

[93] *Germaninvestments AG v. Allomet Corp.*, 2020 WL 6870459, at *1 (Del. Ch. Nov. 20, 2020) ("As master of his complaint, a plaintiff decides, among other things, who to sue, who not to sue, where to sue and what claims to bring.").

[94] *See, e.g.*, *Hoffman v. First Wave BioPharma, Inc.*, 2023 WL 6295345, at *12 (Del. Ch. Sept. 27, 2023) (declining to broaden a plaintiff's allegation to encompass an unpleaded claim and noting that the plaintiff could have, but chose not to, amend the complaint).